STATE, APPELLANT, *v.* FOSTER, RESPONDENT.

(No. 1,692.)

(Submitted October 7, 1901.   Decided November 11, 1901. )

*Larceny—Evidence—Sufficiency—Appeal—New Trial.*

1.   Where an order granting a new trial is silent as to the grounds on which it is based, it will be affirmed, if it can be justified on any ground on which the motion was predicated.
2.   Where there is a substantial conflict in the evidence the action of the trial court in granting or denying an application for a new trial on the ground that the evidence is insufficient to justify the verdict, or that the verdict is contrary to the evidence, will not be disturbed on appeal.
3.   Where there is no substantial evidence to support the verdict it is the duty of the trial court, as a matter of law, to vacate and set aside the verdict, and if it refuse to do so its action will be held erroneous.
4.   On a prosecution for grand larceny, that accused and others were following the itineraries of political speakers under a conspiracy to commit larceny, and that at a political gathering the prosecuting witness carried his purse in his left hand in his pocket, and, while in a crowd, feeling a tugging at his left arm, recognized accused and an associate standing at his left, and after going a distance of three blocks he discovered his purse was missing, is insufficient to justify a conviction of accused for the particular larceny.

*Appeal from District Court, Lewis and Clarke County; Henry C. Smith, Judge.*

W. M. FOSTER was convicted of grand larceny, and from an order granting a new trial the state appeals.   Affirmed.

*Mr. James Donovan, Attorney General,* and *Mr. O. W. Mc-Connell,* for the State.

*Mr. R. R. Purcell* and *Messrs. Nolan & Loeb,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant was convicted of the crime of grand larceny, and sentenced to a term of two years at hard labor in the state

prison.    He thereupon moved for a new trial, alleging as grounds therefor that the court had misdirected the jury in matters of law, that it had erred in the decision of questions of law arising during the trial, and that the verdict was contrary to the law and the evidence.    From an order granting the motion the state has appealed.

The order is silent as to the grounds upon which the district court based its action.    It is therefore incumbent upon this court to affirm it if it can be justified upon any one of the grounds upon which the motion was predicated.    (*State* v. *Schnepel,* 23 Mont. 523, 59 Pac. 927 ; *Menard* v. *Montana Central Railway Co.,* 22 Mont. 340, 56 Pac. 592.)    Counsel for the state have given attention in their brief to two questions only, namely, whether the district court erred in admitting certain evidence, and whether the verdict was contrary to the evidence.    We shall notice the latter question only, as we think that a correct answer to it is conclusive of this appeal.    The rule has frequently been declared by this court that an application for a new trial on the ground that the evidence is insufficient to justify the verdict, or that the verdict is contrary to the evidence, is addressed to the sound discretion of the trial court, and that where there is a substantial conflict in the evidence the action of that court in granting or denying the application will not be disturbed on appeal.    (*Hamilton* v. *Nelson,* 22 Mont. 539, 57 Pac. 146 ; *Patten* v. *Hyde,* 23 Mont. 23, 57 Pac. 407.)    If, however, there is no substantial evidence to support the verdict, a different rule applies.    In the latter case it becomes the duty of the trial court, as a matter of law, to vacate and set aside the verdict and if it refuses to do so its action will be held erroneous.    (*State* v. *Welch,* 22 Mont. 92, 55 Pac. 927.)    The evidence contained in the record presents a case to which the second rule is applicable.    Indeed, the request made by the defendant at the close of the state's case that the court direct a verdict of acquittal should have been granted; because there was then no evidence before the jury to warrant a verdict of guilty.    Nor did the defendant thereafter by his

evidence aid the state's case in the slightest degree, for his effort was directed entirely towards the impeachment of one of the state's witnesses.

The facts shown by the evidence are as follows: On the evening of September 17, 1900, Mr. Roosevelt, candidate for the vice presidency of the United States, addressed the citizens of Lewis and Clarke county at the city of Helena. A procession, it seems, was formed to conduct the speaker to the Auditorium, the place of the meeting. Crowds of people were collected upon the streets along the line of march. One Southmayd was standing with his daughter among a crowd at the corner of Main street and Sixth avenue, and, as the carriage in which Mr. Roosevelt was riding passed this point, Southmayd stepped into the street near the line of march, in order to obtain a better view. He then held his purse clasped in his left hand in his trousers pocket. The purse contained, among other things, two United States silver certificates of the denomination of $10, the subject of the larceny charged in the information. While Southmayd was standing among the crowd, looking on, some man jostled him severely, passing on his right towards the front, and then pressing backward towards his left. At the same time he felt a tugging at his left arm, as if some one were trying to lift his hand from his pocket. Turning in that direction, he saw the defendant standing at his left, and by him another person by the name of Hall. He did not discover who was tugging at his arm. His hand was not removed from his pocket by the tugging, and after it was over he still held his purse in his pocket as before. When the carriage bearing Mr. Roosevelt had passed, Southmayd returned to the sidewalk where he had left his daughter, and walked with her immediately to the Auditorium, about three blocks distant. The doors of the building had not been opened when they arrived, and they stood a few minutes with others waiting for admittance. At this time Southmayd missed his purse. Looking about him, he saw none but familiar faces. Other persons during the same evening, while on the streets or in attendance

at the speaking, lost their purses or other valuables at the hands of pickpockets. The next day the defendant and six others were arrested on a railroad train on their way to Butte, where Mr. Roosevelt was to speak again. All these persons were strangers in Montana, and appeared to be traveling together. They were searched as soon as arrested. Upon the defendant were found memoranda and clippings from newspapers showing the itineraries of Mr. Roosevelt and Mr. Bryan, candidate for the presidency of the United States; notices of dates and places of reunions of the Grand Army of the Republic, and other assemblages of people throughout the country; a mileage book for 1,000 miles, sold to him by the Northern Pacific Railway Company at St. Paul, Minn., on September 15, 1900, with 167 miles unused; a bunch of railroad conductors' checks of different colors; and $100.65 in cash. Upon the other persons arrested were found similar articles, including partially used mileage books, conductors' checks, itineraries of prominent political speakers, etc. Upon one of them named Wilson was found a $5 Canadian bill, which was identified by one Collins, a witness for the state, as his; he having had a purse containing it, with other money, abstracted from his pocket while in the crowd gathered about the Auditorium before the doors were opened. When searched the prisoners all made false statements as to the amounts of money in their possession. Each was found to have more than he stated. A few days after the arrest the prisoners were again searched, and upon three of them, concealed in various places in their clothing, were found sums of money to the amount of $470. One of them had tried to conceal a $50 bill by putting it in his mouth. There was no evidence tending to show that any of the money found upon any one of the prisoners belonged to Southmayd.

The theory of counsel for the state at the trial was that the defendant and the persons arrested with him were professional pickpockets following the itinerary of Mr. Roosevelt for the purpose of plying their trade in the crowds which gathered to hear him; that they were engaged in the common purpose for

their mutual benefit; that either the defendant or Hall abstracted Southmayd's purse at the time he was jostled in the crowd; and that, whether the defendant or Hall actually took the purse, the defendant was guilty, by reason of the fact that he was engaged with Hall and the other prisoners in a conspiracy to pick pockets. It was upon this theory that counsel offered and the court admitted the evidence touching the articles found upon the defendant and his fellow prisoners, the attempts to secrete the money by some of them, and the larceny of the Canadian bill from the witness Collins. Conceding, for the sake of argument, that all of this character of evidence was competent and material to show a conspiracy to commit larceny by the defendant and his associates, and that it is sufficient to establish such a conspiracy, there is no evidence in the record to justify the conclusion that any of them committed the particular larceny in question. In that connection it appears only that Southmayd was jostled by some one, that he felt the tugging at his arm, that he recognized the defendant and Hall standing at his left, that after this demonstration was over he still retained his purse in his hand, and that several minutes afterwards, at a distance of three blocks away, he discovered that it was missing. While these facts may justify a suspicion that the defendant committed the larceny, or that Hall did it with his assistance, they are wholly insufficient to warrant a verdict of guilty, and should not have been submitted to the jury. The district court was therefore not only justified in making the order granting a new trial, but it was clearly its duty to do so.

The order complained of is therefore affirmed.

*Affirmed.*