[Criminal No. 835.   Filed June 8, 1936.]

[58 Pac. (2d) 523.]

VESTER IMPSON, Appellant, v. STATE OF ARIZONA, Respondent.

Mr. Marshall W. Haislip, for Appellant.

Mr. John L. Sullivan, Attorney General, and Mr. W. Francis Wilson, Assistant Attorney General, for the State.

ROSS, J.—Vester Impson was convicted of grand larceny, to wit, of stealing a motor vehicle, that is, an International truck, model 1934, the property of J. C. McElhaney, and placed on probation. Because he feels the court erred in refusing requested instruc-

tions and in giving instructions to the jury, he has appealed.

The facts necessary to a consideration of the errors assigned are as follows: On August 28, 1935, one L. L. Hull was, and had been for some six months, in the employment of J. C. McElhaney as an irrigation boss at the latter's ranch near Buckeye. He was living with one Garland Wimberly, and for some two or three weeks the defendant, who was a second cousin of Hull's, had been stopping with them and doing odd jobs in the neighborhood, but had not been employed by McElhaney, nor had he done any work for him. Hull was furnished by McElhaney all tools and implements, including the International truck, necessary to do his work of irrigating the ranch.

About 7:30 o'clock the evening of August 28, 1935, Hull left the Wimberly house for Phoenix and did not return until around 2:30 o'clock the next morning. When he left for Phoenix, the truck was parked in front of the Wimberly house; the key being hidden under the mat on the floor of the truck. When he returned, the truck was gone, and he learned from Wimberly that defendant had left about 9 or 10 o'clock that night, driving the truck away. About a week afterwards Hull and W. S. Armstrong, foreman of the McElhaney ranch, apprehended the defendant at Sierra Blanca, Texas, where his wife lived. He told them "he was drinking and just taken the blues and got the truck and drove off with it." About the same time the local officers located the truck at an auto court at Globe, Arizona, where defendant had left it as soon as the gasoline was exhausted.

The defendant was a witness in his own behalf, and admitted taking the truck, but stated that he thought it belonged to his cousin, Hull; that he in-

tended to drive it to Phoenix to a dance at Jack's Place and then return it. He explained that he had had some drinks of whisky and beer before taking the truck, and that he indulged in more drinks at Jack's Place; that there he met a transient camp acquaintance who joined him; that a drunken barber asked him and his new acquaintance to take him to Sunflower, a road camp for transients on the Bush highway, and he did so, going through Mesa, where he was handed a ticket by an officer for speeding; that he left the barber at Sunflower and went on into Globe and arrived there with his gasoline exhausted and no money to buy more; that he left the truck at an auto court in Globe, expecting his companion, picked up at Jack's Place, to return it to Buckeye; that from Globe he wired his wife at Sierra Blanca, Texas, for money, and received from her $5, and then left for Sierra Blanca and was arrested upon his arrival there and as he got off a freight train.

■ The first six assignments of error bear upon the question of possession. The information laid the ownership of the truck in McElhaney and the evidence conclusively supports that allegation. Defendant seems to think that, because the truck had been turned over by McElhaney to Hull to be used by the latter in performing his duties of irrigating the ranch, the ownership should have been alleged in Hull. The latter was merely a servant or employee of McElhaney, and his possession, of course, was that of his employer.

The instructions that were refused submitted that possession of the car being in Hull constituted a variance from the allegation in the information, but that is not correct. It is the law that in every larceny there must be a trespass upon the possession of the general or special owner, as the case may be. That

is one of the elements of the crime. But a trespass upon the possession of the agent or servant is a trespass upon the possession of the owner of the property. These instructions were very properly refused.

■ The defendant contends that the following instruction does not correctly and fully state the law applicable to the facts of the case, in that it omits the element of intent on the part of defendant to permanently deprive the owner of his property:

"The material allegations of larceny which must be proven beyond a reasonable doubt are the felonious intent, that is, the intent to steal, and this intent as applied to the taking means a taking without color of right or excuse, an asportation, which means the carrying away or the movement from one place to another, with the intent to convert to one's own use the property of another. Those are the material elements of larceny in this state, which must be proven beyond a reasonable doubt before you would be justified in returning a verdict of guilty. . . . "

Larceny is defined by our statute as follows:

"Larceny is the felonious stealing, taking, carrying, leading, or driving away of the personal property of another." Section 4756, Rev. Code 1928.

Wharton's Criminal Law (12th ed.), volume 2, section 1122, states:

"To constitute larceny, it is necessary that the goods should be taken feloniously, without the owner's consent. . . . Under the present head (Intent) we limit ourselves to inquiring what 'feloniously,' or 'felonious intent,' in this sense means. For it should be remembered that not every taking of the property of another, without his knowledge or consent, amounts to larceny. To make it such it must be accompanied by circumstances which demonstrate a 'fraudulent or felonious' intention to deprive the possessor permanently of the thing taken. This 'fraudulent' or 'felonious' intent (and the terms are used often convertibly) is an intent, without an honest

claim of right, and with the expectation of benefit to self, to destroy, to take permanently from another goods which are his property."

It is well settled that the taking of property temporarily and with the intention of returning it is not larceny. *Hurley* v. *State*, 22 Ariz. 211, 196 Pac. 159.

The court in *People* v. *Brown*, 105 Cal. 66, 38 Pac. 518, 519, had before it instructions which declared, in effect, that it was not necessary that a defendant intend permanently to deprive the owner of his property. It was there said:

"We think the authorities form an unbroken line to the effect that the felonious intent must be to deprive the owner of the property permanently. The illustration contained in the instruction as to the man taking the horse is too broad in its terms as stating a correct principle of law. Under the circumstances depicted by the illustration, the man might, and again he might not, be guilty of larceny. It would be a pure question of fact for the jury, and dependent for its true solution upon all the circumstances surrounding the transaction. But the test of law to be applied to these circumstances for the purpose of determining the ultimate fact as to the man's guilt or innocence is, did he intend to permanently deprive the owner of his property? If he did not intend so to do, there is no felonious intent, and his acts constitute but a trespass. While the felonious intent of the party taking need not necessarily be an intention to convert the property to his own use, still it must in all cases be an intent to wholly and permanently deprive the owner thereof. As directly and fully sustaining this principle, we cite: *State* v. *Davis*, 38 N. J. Law 176 [20 Am. Rep. 367]; *State* v. *Homes*, 57 Am. Dec. 275, note; *State* v. *South* [28 N. J. Law 28] 75 Am. Dec. 250; *State* v. *Ryan*, 12 Nev. 401 [28 Am. Rep. 802]; *State* v. *Slingerland*, 19 Nev. 135, 7 Pac. 280; Desty, Cr. Law, § 155j; *People* v. *Juarez*, 28 Cal. 380." See, also, *State* v. *Shepherd*, 63 Kan. 545 66 Pac. 236.

It being the contention of the defendant that he intended to use the property for a temporary purpose and return it, the above instruction, in connection with another bearing upon the same question, not only failed to state the law correctly under the facts, but in effect told the jury to find the defendant guilty. Such other instruction reads:

"Now, if you believe from the evidence in this case that this defendant did at the time and place charged in this information drive from its parking place the truck in question and take said truck to the City of Globe in this state, and at the time of taking it at its parking place in Buckeye the defendant intended to convert the same to his own use, and that that truck was at the time and place the property of Mr. McElhaney, and that Mr. McElhaney or his servants had not given the defendant any consent to drive the car, that is, at the time, then I charge you that it is your duty to return a verdict of guilty of grand larceny in this case."

If defendant in fact did intend to return the truck, and that was a question under the evidence for the jury to pass upon, he was guilty of a civil wrong against the owner. Temporary conversion or use does not constitute larceny. It is said in 36 Corpus Juris 761–763, section 101:

" . . . It is this intent which distinguishes larceny from a mere civil trespass. Every taking of another's property without legal justification is a trespass upon the owner's right to its continued possession, but it does not constitute a crime unless the act is perpetrated feloniously, that is *animo furandi* or with the intent to steal."

Because of the misdirections to the jury, the judgment is reversed, and the cause remanded that further proceedings may be had in accordance herewith.

LOCKWOOD, C. J., and McALISTER, J., concur.