STATE, Respondent, v. LABBITT, Appellant

No. 8536

Submitted January 31, 1946. Decided February 20, 1945.

156 Pac. (2d) 163

Mr. R. G. Wiggenhorn and Mr. T. H. Burke of Billings for Appellant.

Mr. R. V. Bottomly, Attorney General, Mr. Fred Lay, First Assistant Attorney General, of Helena, Mr. Bert Kronmiller of Hardin for Respondent.

MR. JUSTICE ADAIR delivered the opinion of the court.

Defendant was convicted of the crime of grand larceny, sentenced to two years in the state prison and here appeals from the judgment of conviction.

At the conclusion of all the evidence in the case, the defendant made a motion for the court to direct the jury to return a verdict of not guilty because of the utter failure of proof of any felonious intent on the part of defendant to steal, i. e. to permanently deprive the owner of her property. The trial

court denied the motion and such ruling is the sole error assigned on this appeal.

The defendant, L. H. Labbitt, a physician and surgeon, owns and operates a building in Hardin, Montana, known as the Labbitt Apartments. Except for the front suite of six rooms wherein defendant maintains his medical office, the entire building consists of apartments occupied by various tenants.

Defendant rented the apartment adjoining his office to Miss Edna Tobias at the agreed rental of $20 per month. The means of reaching this apartment from the street was through the waiting room of defendant's office. The occupancy of Miss Tobias began in September 1941 and continued to April 1943. During the latter part of March 1943, Miss Tobias advised defendant that she contemplated leaving for the state of Indiana because of the illness of her father who resided there.

At this time, Miss Tobias was in arrears with her rent and defendant rendered her a statement of account wherein he claimed that she owed him $80 for four months rent and also $10 for professional services, making a total of $90. Miss Tobias disputed $30 of the bill rendered claiming she owed defendant only $60 for three months rent and she wrote a check payable to defendant for the latter amount, writing thereon "Payment in full," and placed same under defendant's office door. The defendant declined to accept the $60 check as settlement in full of the account and promptly returned the check to Miss Tobias uncashed. Thus the rent remained unpaid and it was still unpaid at the time of defendant's trial in December, 1943.

On Friday, March 26, 1943, Miss Tobias left Hardin by bus, of which fact the defendant became advised but he did not know where she had gone nor when she would return. Thereupon defendant sought the advice of an attorney-at-law respecting his rights as a creditor and was advised to hold the personal belongings left by the tenant in the apartment until the rent was paid. Following this advice the defendant removed from the apartment two fully packed suit cases found

just inside the door, a small table radio and a portable typewriter. These articles the defendant placed in a room adjoining the apartment from which they were removed.

It developed that Miss Tobias had gone to Billings, Montana, for the week-end and on Sunday evening, March 28th, she returned to Hardin. Upon entering her apartment she immediately discovered that her luggage, radio and typewriter were gone but she neither reported their loss to her landlord nor did she make any inquiry of him concerning the matter.

The following noon, March 29th, as Miss Tobias was leaving her apartment she saw, through a partly open door of the room adjoining her apartment, what appeared to be her luggage but she did not enter the room nor did she make any inquiry of her landlord concerning same. Instead, she proceeded immediately to the office of the county attorney with whom she talked the matter over but she left his office with the request that no action be taken until she gave further thought to the affair. Concerning this visit to the county attorney, Miss Tobias testified: ''When I talked this over with the county attorney—I just don't recall how it came in, but I got somehow or other in the county attorney's office, that he (defendant) had asked someone if it would be all right for him to go into my apartment and take my belongings; and the fact that he (defendant) had asked a question like that, also made me feel that he (defendant) must have tried it.''

On Tuesday afternoon, March 30th, Miss Tobias made a second trip to the county attorney's office at which time she swore to a complaint charging the defendant with the crime of burglary, following which a warrant was issued for defendant's arrest. The arrest was made by the undersheriff who testified: ''I went over with the warrant, and Doctor Labbitt was busy right at the time, for a minute or two before he came out.'' The officer then asked the doctor if he had Miss Tobias' property, and the latter freely and frankly admitted that he had the property, at the same time delivering same to the undersheriff saying: "Here it is.'' The property was still

in the room adjoining the apartment of Miss Tobias and, according to the testimony of the officer, it could be seen when the door was open. The property was removed to the sheriff's office and remained there for about an hour when the undersheriff delivered all of it to Miss Tobias at her apartment.

What became of the complaint charging burglary the record fails to disclose. However, by an information filed April 3, 1943, the county attorney accused the defendant of the crime of grand larceny, charging that on or about the 28th day of March, A. D. 1943, he "did willfully, wrongfully, unlawfully and feloniously take from the possession of one Edna Tobias, the true owner thereof, the following described personal property, to-wit: 1 trunk suit case, 1 suit case, 1 Remington Portable typewriter, 1 Radio, Clothing consisting of ladies' dresses and ladies' shoes, which is of the value of $225.00, with the intent in him, the said L. H. Labbitt, to then and there deprive and defraud the said true owner of her said property, and of the use and benefit thereof."

The record shows that in operating his apartment house the defendant personally attends to the ordinary upkeep, repair and janitor work of the building; that in this connection he has a pass key for all apartments; that on various occasions he had used the pass key to unlock the door of Miss Tobias' apartment during her absence when repairing water faucets, oven doors, windows, etc.; that at the time defendant removed the articles from the apartment he used his pass key to gain admittance and that the removal occurred without the knowledge, consent or authority of Miss Tobias. The clothing mentioned in the information was simply that contained in the two suit cases which had theretofore been fully packed by Miss Tobias in readiness for her contemplated trip to Indiana.

The attorney on whose advice the luggage, radio and typewriter were held testified that when the defendant consulted him defendant said "he (defendant) understood Miss Tobias was about to leave this community permanently and asked

what he (defendant) could do to protect himself on the rent that he said she owed him, and at that time I told him I would advise holding whatever personal belongings she had in this apartment until she paid the rent.''

Defendant testified:

''Q. Now I will ask you, Doctor: Why did you take this property? A. Because she was indebted to me, and was threatening to move out, and I had no other recourse. My attorney advised me to see that the property did not leave until the account was paid.

''Q. Did you intend to keep it? A. No, sir.

''Q. What did you intend to do with it? A. I intended to return it to her as soon as she made adjustment of her account.

''Q. When the Sheriff came for it, and asked you for it, did you give it to him without argument or objection? A. Yes, sir, certainly.

''Q. Now, I believe you testified, * * * an attorney, advised you to the effect that you should not let her take the property away; will you tell us why you took it instead of just standing and seeing that the property wasn't moved? A. If I hadn't taken the property I would have to stand guard over her apartment.''

The testimony of Miss Tobias, the prosecuting witness, shows that while consulting the county attorney she learned defendant had sought advice as to whether ''it would be all right for him to go into my apartment and take my belongings.'' Thus the evidence affirmatively shows that both the prosecuting witness and the county attorney knew, before any charges were filed, that the defendant had endeavored to ascertain his rights as a creditor before holding the debtor's property. The evidence on the part of both the state and the defendant affirmatively shows that defendant had no intention at any time to permanently use or permanently deprive Miss Tobias of her property and that his aim was to hold same temporarily and for the one purpose of enforcing the payment of the debt which Miss Tobias then owed defendant.

It is elementary that the taking of property temporarily and ▆ with the intention of returning it is not larceny. The *animus furandi*, or intent to steal, is an essential element of the crime of larceny. "It is this intent which distinguishes larceny from a mere civil trespass. Every taking of another's property without legal justification is a trespass upon the owner's right to its continued possession, but it does not constitute a crime unless the act is perpetuated feloniously, that is with *animus furandi* or with the intent to steal." 36 C. J., Larceny, Sec. 101, p. 763. "Every taking and carrying away by one person of the personal property of another is not larceny even though it is done without right or claim of right and for the purpose of appropriating the property to the use of the taker. Super-added to the wrongful taking there must be a felonious intent, for without it there would be only a bare trespass which, however aggravated, would not be crime. It is the criminal mind and purpose going with the act which distinguishes a criminal trespass from a mere civil injury." 32 Am. Jur., Larceny, Sec. 36, p. 925.

"To constitute *larceny*, the party committing the offense ▆ must have the view of converting the property to his own use *permanently*, or depriving the owner of his property *permanently*." (Emphasis ours.) Territory v. Paul, 1875, 2 Mont. 314, 319. "To constitute the crime of larceny the intent which accompanies the act of taking must be the criminal intent to deprive the owner of his property, not temporarily, but *permanently*." (Emphasis ours.) Valley Mercantile Co. v. St. Paul F. & M. Ins. Co., 49 Mont. 430, 143 Pac. 559, 560, L. R. A. 1915B, 327, Ann. Cas. 1916A, 1126. See also State v. Wallin, 60 Mont. 332, 199 Pac. 285; State v. Sawyer, 95 Conn. 34, 110 A. 461, 13 A. L. R. 139; Cain v. State, 21 Tex. App. 662, 2 S. W. 888; Impson v. State, 47 Ariz. 573, 58 Pac. (2d) 523; 13 A. L. R. note p. 142; 116 A. L. R. note p. 997; Wharton's Criminal Law, 12th Ed., Vol. 2, Sec. 1122.

In its brief the state says: "We have taken this position that the court is prohibited from directing a verdict in this, or any,

criminal case, relying upon State v. Thierfelder, 114 Mont. 104, 132 Pac. (2d) 1035, and the provisions of Sec. 11995, Revised Codes of Montana.''

In the early case of Territory v. Laun, 1889, 8 Mont. 322, 20 Pac. 652, 654, the defendant was prosecuted for the crime of larceny. At the close of the evidence for the prosecution the trial court, on motion of the defendant, made an order directing the jury to acquit. In affirming such order this court said: ''The practice of directing an acquittal whenever the evidence, in the discretion of the judge, fails to support the charge, is well recognized as a proper order in criminal procedure. Reason and common sense commend it as the course to be pursued, for why should the expense of a prosecution be incurred, and the time of the court consumed, if the evidence for the prosecution is of that nature that it fails to satisfy the judicial mind that all of the material elements of the crime charged have been proven? There is no law in our statutes, express or implied, which forbids the exercise of this power in the trial judge—a power which Mr. Wharton characterizes as a necessary prerogative of the judge trying the case.''

In State v. Welch, 1898, 22 Mont. 92, 55 Pac. 927, 930, a prosecution for murder, this court, speaking through Justice Pigott, said: ''The record presents, not a case of mere insufficiency of the evidence to warrant a conviction, but one of utter failure of proof, and therefore the court should have granted the motion to instruct the jury to find the defendant not guilty. There is a distinction between insufficiency of the evidence to justify a verdict, and no evidence at all upon which to base it. [Louisville & Nashville] R. Co. v. Woodson, 134 U. S. 614, 10 S. Ct. 628 [33 L. Ed. 1032]. In the one case the court may advise the jury to acquit the defendant, which advice the jury is not bound to follow (Penal Code, Sec. 2096), whereas in the other case it is the duty of the court to direct a verdict of not guilty.''

In State v. Mahoney, 1900, 24 Mont. 281, 61 Pac. 647, a

34

prosecution for rape, this court approved of the interpretation of the law as announced in State v. Welch, supra.

In State v. Foster, 1901, 26 Mont. 71, 66 Pac. 565, a prosecution for grand larceny, this court speaking through Chief Justice Brantly said that where there is no substantial evidence in a criminal cause to support the verdict "it becomes the duty of the trial court, as a matter of law, to vacate and set aside the verdict, and if it refuses to do so its action will be held erroneous", citing State v. Welch, supra.

In State v. Gomez, 1920, 58 Mont. 177, 190 Pac. 982, 983, a prosecution for murder, the trial court, on defendant's motion made at the close of the state's case, ordered the jury to acquit. This court, finding no substantial evidence in the record upon which to base a verdict of guilty, affirmed the order of the trial court saying, through Chief Justice Brantly: "This being the condition of the evidence, if the case had been submitted to the jury and a verdict of guilty had been returned, it would have been obligatory on the trial court, on motion addressed to it, to grant the defendant a new trial. It was therefore its duty at the close of the evidence to order the jury, as it did, to return a verdict of not guilty. Territory v. Laun, 8 Mont. 322, 20 Pac. 652; State v. Welch, 22 Mont. 92, 55 Pac. 927; State v. Foster, 26 Mont. 71, 66 Pac. 565."

In State v. Wallin, 1921, supra [60 Mont. 332, 199 Pac. 288], a prosecution for grand larceny, this court found there was a failure of proof of the essential element of felonious intent and, in reversing the judgment of conviction, remanded the cause to the district court "with directions to dismiss the information and discharge the defendant."

Sec. 12227, Revised Codes, provides: "The court may, either of its own motion or upon the application of the county attorney, and in furtherance of justice, order an action, information, or indictment to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes."

Sec. 12108, Revised Codes, provides when an appeal may be taken by the state in a criminal cause. Subdivision 5 thereof

provides an appeal may be taken by the state—"5. From an order of the court directing the jury to find for the defendant." This statute clearly recognizes that, in practice, a trial court, may in a proper case, order or direct a jury to acquit the defendant and that from such order the state may appeal.

Section 11995, Revised Codes, provides: "If, at any time after the evidence on either side is closed, the court deems it insufficient to warrant a conviction, it may advise the jury to acquit the defendant; but the jury is not bound by the advice."

When there is an utter failure of proof as to one or more of the essential elements of the crime charged, it is the duty of the trial court to order the jury to return a verdict of not guilty. State v. Welch, supra; State v. Gomez, supra.

On the other hand, Sec. 11995, Revised Codes, "is applicable to those cases only in which the trial court deems the evidence, although tending to prove every element necessary to constitute the crime charged, insufficient in weight to warrant a conviction." State v. Gomez, supra. See also State v. Fisher, 23 Mont. 540, 59 Pac. 919; State v. Tate, 55 Mont. 343, 177 Pac. 243; 17 A. L. R. at p. 938.

We adhere to the rule announced by Mr. Justice Pigott speaking for this court in State v. Welch, supra. That rule indicates when a trial court may *order or direct* the jury to acquit and when, under Sec. 11995, Revised Codes, it may only advise the jury to acquit, and we therefore overrule any and all pronouncements to the contrary appearing in State v. Thierfelder, supra.

In the instant case there was an utter failure of proof of *animus furandi* or felonious intent to steal and the evidence of both the state and the defendant affirmatively shows that there was no intent on the part of defendant to permanently deprive Miss Tobias of her property.

The cause is remanded with directions to dismiss the information and discharge the defendant.

Mr. Chief Justice Johnson and Associate Justices Angstman and Cheadle concur.

Mr. Justice Morris (dissenting in part):

I dissent from that part of the majority opinion which holds that the trial court may direct the jury to acquit the defendant in a criminal case. Sec. 11995, Revised Codes, deprives the trial court of the power to direct a verdict in such cases. There are opinions to the contrary but the preponderance of authority in this jurisdiction holds that the court may advise the jury but not direct it. In the instant case, however, I think the trial court, if it believed the evidence insufficient to sustain a conviction for the offense charged, should have, of its own motion, advised the jury to return a verdict in favor of the defendant and I think that is all that the statute authorized the trial court to do in the premises.

The Thierfelder case which was approved by all five members of the court a little over two years ago contains a resume of all the decisions of this court pertinent to the construction of Sec. 11995. The last opinion of this court that sustains the majority opinion was rendered more than 22 years ago, State v. Gomez cited by the majority. Since that time the court has determined on appeal four cases: State v. Moe, 68 Mont. 552, 219 Pac. 830; State v. Wong Hip Chung, 74 Mont. 523, 241 Pac. 620; State v. Collins, 88 Mont. 514, 294 Pac. 957, 959, 73 A. L. R. 861; and the Thierfelder case. All these cases hold contrary to the conclusions of the majority in the case at bar. In the Collins case, Chief Justice Callaway, commenting on the arguments of counsel to the effect that the trial court should have directed a verdict in favor of the defendant, said: "Incidentally, the court could have done no more than to advise the jury to acquit," citing Sec. 11995, Revised Codes.

As to subdivision 5 of Sec. 12108, Revised Codes, that section is in *pari materia* with Sec. 11995. The two sections taken together comprise the only safeguard against the release of a criminal due to error of the trial court, which error might

arise from duress, undue influence or partiality toward the defendant. Sec. 12108, as a whole, reads as follows:

"An appeal may be taken by the state —

"1. From a judgment for the defendant on a demurrer to the indictment or information;

"2. From and order granting a new trial;

"3. From an order arresting judgment;

"4. From an order made after judgment, affecting the substantial rights of the state;

"5. From an order of the court directing the jury to find for the defendant."

All five of these subsections were obviously designed as a sort of catch-basin to prevent a corrupt, prejudiced or incompetent trial court from allowing a guilty person to escape. The notion that subsection 5 is a recognition of a right of the trial court to direct the acquittal of the defendant in a criminal case is the purest sort of fiction. It seems perfectly clear that that subdivision was intended to allow the state the right to override the illegal and erroneous act of a trial court. It seems to me that any unprejudiced mind that would carefully review the Moe case to which I have referred could not evade the conviction that the trial judge in that case, a member of the judiciary of the State of Montana who has in my judgment no superior on the bench today, followed the provisions of Sec. 11995. He advised the jury that there was no evidence worthy of submission to it and advised them to acquit the defendant but added that they were not obliged to follow his advice. On that statement he was standing squarely on the statute. The jury did not take his advice and he authorized a new trial and the defendant appealed from his order directing such new trial and his decision ordering the new trial was readily affirmed here. True a new trial may sometimes be a hardship on an innocent defendant but the remedy has never heretofore failed to be sufficient on appeal to this court. I am convinced that Sec. 11995 was enacted for the specific purpose

38

of prohibiting a trial judge from encroaching upon the functions of the jury.

In our remanding the cause and directing that the action against the defendant be dismissed, we are exercising a power that is not vested in the trial court but is vested in this court and I am in full accord with the majority in directing that the action be dismissed, but not on the grounds advanced by the majority.