STATE, Appellant, v. PEREZ, Respondent.

No. 9119.

Submitted January 15, 1952. Decided April 17, 1952.

Rehearing denied May 6, 1952.

243 Pac. (2d) 309.

Mr. J. J. McIntosh, County Atty., Forsyth, Mr. Arnold H. Olsen, Atty. Gen., Mrs. Vera Jean Heckathorn and Mr. Wesley W. Wertz, Sp. Asst. Attys. Gen., for appellant.

Mr. F. F. Haynes, Forsyth, for respondent.

Mr. McIntosh, Mrs. Heckathorn, Mr. Wertz and Mr. Haynes argued orally.

MR. JUSTICE BOTTOMLY:

This action originated in the justice court of Rosebud county, on complaint of the sheriff, charging defendant with the misdemeanor of keeping open a licensed retail liquor establishment known as the Century Club after the hour of 2:00 o'clock a. m. and before the hour of 1:00 o'clock p. m. on Sunday, March 27, 1949, permitting patrons, guests and others, save employees of such establishment, to remain therein to dance and drink after 2:00 o'clock a. m. on said Sunday.

The charge was tried to a jury and the jury found the defendant guilty of the charge. The defendant appealed his conviction to the district court of the sixteenth judicial district of Rosebud county.

Trial was had before a jury in district court. At the conclusion of all the evidence, the defendant submitted to the court the following motion: ''Comes now the defendant at the close of all the evidence, both sides having rested, and moves the Court for an order directing the jury to return a verdict of acquittal herein upon the ground that the evidence is legally insufficient to sustain the allegations of the charge and that said evidence fails to establish in law the commission of the offense

charged.'' The court granted the motion. The court thereupon formally directed the jury to find a verdict of not guilty. The court had the court reporter hand the prepared verdict to a member of the jury to be signed by him as the foreman, all of which the state excepted to. The jury returned under said court order the following verdict: ''We, the jury duly impanelled to try the issues in the foregoing cause, find the defendant not guilty.''

The state appeals from the trial judge's order directing the jury to find the defendant not guilty, specifying as error:

''1. The court erred in granting the defendant's motion for an order directing the jury to find for the defendant upon the grounds specified in the motion or any thereof.

''2. The court erred in making and entering its order and decisions herein directing the jury to find for the defendant.''

The right of appeal by the state is limited by statute, R. C. M. 1947, sec. 94-8104, and should be strictly construed. Section 94-8104 provides, as far as pertinent here, that ''an appeal may be taken by the state * * * 5. From an order of the court directing the jury to find for the defendant.''

Here, had there been an utter failure of proof as to one or more of the essential elements of the crime charged, then the trial court would have been justified in ordering the jury to return a verdict of not guilty. State v. Labbitt, 117 Mont. 26, 156 Pac. (2d) 163.

However, where there is evidence tending to prove every element of the offense, but where the trial court considers the evidence insufficient in weight, then it should proceed under R. C. M. 1947, sec. 94-7227. State v. Labbitt, supra.

The trial court here proceeded on the theory that there was an utter failure of proof of some of the essential elements of the crime charged. Hence our province is to determine whether there was evidence to prove all the essential elements of the crime charged.

The facts are: That the Century Club is a licensed establishment for the retail of beer and liquor; that the building in which

the licensee is authorized to retail liquor and beer is a rather large structure; that starting on the east side of the building there is a kitchen and a coffee buffet and a large restaurant or dining room; the next room to the west is a smaller room called a party room; adjoining on the west is a large dance room, access to which from the restaurant is gained through a door; that the dance hall or room has an orchestra pit on the north end and along the westerly wall is the main bar and in the southeast corner of the dance hall is a service bar, where whisky drinks are dispensed. Shortly after 2:00 a. m., Sunday morning, March 27, 1949, the sheriff of Rosebud county called at the establishment and found the doors leading into the dance hall where the bars were located unlocked; on entering the dance hall there were people lined up all along the main bar drinking; there were bottles of beer on the bar in front of them, and on the bar other drinks in glasses. The sheriff asked defendant, ''Why haven't you locked up, and these people cleared out? That's against the law.'' The defendant told the sheriff, ''I don't have to. The county attorney, Jim Walsh, told me I was running it all right.'' The sheriff stayed about 20 minutes and when he left, the people were still lined up at the bar drinking. The sheriff went to his car which was parked on the west side of the building and sat there for some time; he noticed two cars drive up and eight people got out and went into the dance hall where the bars are located; he observed no one leaving the place as long as he remained there.

The saloon and liquor business, where permitted, has always been under special restrictions and limitations and subjected to a variety of restrictive special legislation. The people of this state have tried prohibition, then the liquor store, then again to the retail liquor and beer establishment. The present retail liquor license law is enforced by the majority of the retailers themselves; only a few attempt to evade it by a variety of schemes and plans.

The question here presented is whether the defendant is guilty of the misdemeanor of keeping open to the public his retail beer

and liquor licensed establishment on Sunday, March 27, 1949, by allowing and permitting the public to remain there dancing and drinking after the hour of 2:00 o'clock a. m. of said day. The evidence is uncontroverted and admitted that the defendant permitted the public to remain in the dance hall and bar room after the hour of 2:00 o'clock a. m. on Sunday, March 27, 1949, and they remained therein on said date, as customary until 3:30 or 4 o'clock a. m.

Defendant's witness, Vincent Lujan manager of the Century Club, testified in regard to the doors leading from the outside into the bar and dance room after 2:00 a. m. on said date, that the doors remained open for the public to come in and out; not necessarily to the bar, just if they want to eat after 2:00 o'clock. Lujan also testified the bartenders always left the bars at five minutes to 2:00 o'clock. However, the bartender, Lewis Cestrick, testified that if at five minutes to 2:00 o'clock they made a call for last drinks, he would serve them beer or drinks until 2:00 a. m.

Lujan further testified that there were folding doors to the opening between the bar room and the dining room or restaurant; that they were jammed in and couldn't be closed; the door was wide open; that the partitions in the building were just for their convenience, and the convenience of private parties; that he personally served four or five meals at the big bar some fifteen minutes after 2:00 a. m. of said Sunday.

The selling of beer and liquor at retail is not an absolute ██ right, but it is a business, which the state, under its police power, may and always has regulated and controlled. The state requires that a license shall be obtained to engage in it, and has prescribed how the business shall be conducted. The applicant for the license knows, or is presumed to know, the law. When he obtains the license, he engages to obey the law applicable thereto. If he deem any of the restrictions imposed by the law on the conduct of the business to be a hardship, he was aware of them in advance, and cannot complain. It is for him to so arrange his retail liquor establishment and any other busi-

ness, such as a restaurant which he may conduct in conjunction therewith, so that the former be closed during the prescribed periods.

The defendant has stressed in the record that there was no sale of beer or liquor after 2:00 o'clock a. m. and that the bars ceased selling beer and liquor at that time.

In this case the defendant is not charged with selling beer or liquor during the prohibited hours; he is charged with keeping his liquor establishment open to the public during the prohibited hours. Compare Sullivan v. District of Columbia, 20 App. D. C. 29.

The pertinent part of sections 4-303 and 4-304, R. C. M. 1947, are as follows: "Hereafter all *licensed establishments* wherein beer * * * is sold, offered for sale or given away at retail shall be *closed* during the following hours: (a) Sunday from two A. M. to one P. M." Sec. 4-303. Emphasis supplied. "During the hours when the said *licensed establishments* where beer is sold at retail are required by this act to be *closed,* it shall be unlawful to sell, offer for sale or give away any beer, and *during such hours all persons* save employees of such *licensed establishments shall be excluded therefrom;* provided, however, that when a *licensed establishment* is operated in conjunction with a * * * restaurant * * * or other lawful business other than that of the sale of intoxicating liquor or beer, then such other lawful business need not be closed, but only the part thereof where such beer or liquor is sold." Sec. 4-304. Emphasis supplied.

Every applicant to the state liquor control board for a retail liquor license knows, or should know, what the law requires of him as a retail liquor licensee; the above law is a part of his license. It informs such licensee that his retail beer and liquor establishment must be closed on every Sunday between the hours of 2 o'clock a. m. and 1 o'clock p. m.; that during these hours and the whole thereof he shall see to it that all persons, save employees, shall be excluded from his licensed liquor establishment. There is no exception in the law as to

this requirement. However, if such retail liquor licensee also conducts a restaurant in conjunction with his liquor establishment, the restaurant or other lawful business need not be closed. But this clause does not modify or restrict the positive injunction that the licensed liquor dispensing establishment must be closed.

In construing a statute words of common use are to be taken ▮ in their natural, plain and obvious meaning. The word "closed" is defined as: Closed so as to confine; keep out; shut in or about; confined; encompassed by walls. "Closed" as used in a statute requiring saloons to be closed on Sunday, means absolutely close the front, sides and rear of that part of a room which is used for the purpose of selling liquors. It makes no difference whether any liquor be sold or not. The offense consists in its being open. Compare Harvey v. State, 65 Ga. 568, 570.

The word "exclude" is defined as: To deny entry; to shut out purposely; to keep out, debar. The legislature by requiring the excluding of the public from the establishment at a specified time, simply ordered that the doors be closed so that the public may not enter. To exclude means the act of thrusting out and preventing admission. Compare City of Portland v. Meyer, 32 Or. 368, 52 Pac. 21, 22, 67 Am. St. Rep. 538.

The facts in each case should govern. Here we have the ▮ kitchen and restaurant or dining room entirely separate from the bar room, with a connecting door. The statute is violated by keeping the bar room or retail liquor establishment open and allowing the public to remain therein. The restaurant business may be conducted without using the bar room. Compare Baldwin v. City of Chicago, 68 Ill. 418; Blalock v. State, 108, Tenn. 185, 65 S. W. 398.

In this case where the restaurant business is conducted in rooms separate and apart from the liquor establishment, the using of the bar room for the purpose of serving meals is simply a subterfuge or an alibi and makes a joke of the entire law. Any such interpretation would nullify the positive provision of the

Act requiring the closing of the retail liquor establishment. Compare Mallon v. Commonwealth, 98 S. W. 315, 30 Ky. Law Rep. 328; Bradford v. City of Jellico, 1 Tenn. Ch. A. 700; State v. Gerhardt, 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313.

We think the law is readily understood. It means exactly ██ what it says: That during the hours on Sunday between 2 o'clock a. m. and 1 o'clock p. m. licensed retail liquor establishments shall be closed, and during such hours all persons, save employees of such retail liquor establishments, shall be excluded therefrom.

The court was led into error by defendant's motion to direct a verdict for the defendant. The cause should have been submitted to the jury under proper instructions. The order of the trial court granting defendant's motion for an order directing the jury to find for the defendant and the order directing the jury to return a verdict for the defendant are set aside and the cause remanded for a new trial.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES METCALF and ANGSTMAN, concur.

MR. JUSTICE FREEBOURN:

I dissent. The action of the lower court was correct. R. C. M. 1947, sec. 4-304, provides in part: "* * * that when a licensed establishment is operated in conjunction with * * * other lawful business other than that of the sale of intoxicating liquor or beer, then such other lawful business need not be closed, but only the part thereof where such beer or liquor is sold."

The purpose behind this statute was to prevent interference with the lawful business, but to stop the sale of beer or liquor after 2:00 o'clock a. m.

Since 75 or 80 people were eating dinner in front of the bar and were using, as customary, the bar as a lunch counter, the only reasonable construction that can be given this statute, in order that the lawful business be not interfered with, is that it required the dispensing of beer and liquor to cease at 2:00 o'clock a. m.

The evidence shows no drinks were sold or dispensed after that time. The fact that some customers had before them beer purchased before the closing hour was a reasonable situation constituting no law violation.