STATE OF MONTANA, Plaintiff and Appellant, v. W. L. WIDDICOMBE, Defendant and Respondent.

No. 9686.

Submitted July 27, 1956. Decided September 27, 1956.

301 Pac. (2d) 1116.

Mr. Arnold H. Olsen, Atty. Gen., Mr. C. W. Leaphart, Jr.,

Asst. Atty. Gen., Mr. O. J. Paulson, County Atty., Big Timber, for appellant.

Mr. Claude C. Gray, Big Timber, for respondent.

Mr. Paulson and Mr. Gray argued orally.

MR. CHIEF JUSTICE ADAIR:

By complaint in the justice's court of Sweet Grass County, the defendant W. L. Widdicombe was accused of the crime of illegally possessing furbearing animals, a misdemeanor, the charge being that on or about the 30th day of March, 1955, at the County of Sweet Grass, in the State of Montana, the defendant "did then and there wilfully, wrongfully and unlawfully possess furbearing animals or parts thereof, to-wit: beaver and beaver skins, which then and there had been unlawfully trapped" contrary to the statute in such case made and provided.

Upon his plea of not guilty, the defendant was tried and convicted in the justice court, whereupon he appealed to the district court of Sweet Grass County, where, on October 24 and 25, 1955, he was tried before a jury.

At the trial in the district court, the state offered in evidence the testimony of two deputy game wardens, namely: John F. Burke, who subscribed and swore to the complaint in the justice's court, and one Warren Patten. With the testimony of these two witnesses the state rested its case, whereupon on motion of defendant's counsel the district court directed the jury to return a verdict for the defendant. From this order alone the state has appealed under the provisions of subdivision 5 of R.C.M. 1947, section 94-8104.

Defendant's motion for an order directing the jury to return a verdict of not guilty was made upon the grounds "that the evidence presented by the state has utterly failed to prove all the essential elements of the crime charged and alleged in the complaint and that said evidence is legally insufficient to sustain the allegations of the complaint and that said evidence on

behalf of the state fails to establish in law the commission of the crime alleged.''

In its order granting the defendant's above motion, the district court, referring to section 36 of the Montana Fish and Game Department's Trapper Map and Regulations for the 1954-55 General Beaver Season, said:

''Now the section 36, which has been already shown to you, states—'Those portions of Park, Gallatin and Sweet Grass Counties, including the Yellowstone River *drainage upstream* from the town of Greycliff, shall be open to trapping 700 beaver by General Beaver Season Permit only, from October 15, 1954, through April 30, 1955.' So that the taking of the three beaver that were taken in the traps that were set to catch beaver were beaver of the 700. The deputy game warden testified that the defendant had a general permit and he did take three of the beaver.

''The information in this case charges that the offense was committed on the 30th of March, 1955, and the charge is that the defendant, W. L. Widdicombe, then and there being did then and there wilfully, wrongfully, and unlawfully, possess fur bearing animals, or parts thereof, to-wit, beaver and beaver skins which then and there had been unlawfully trapped.

''So it is being charged that he unlawfully trapped three beaver. But the testimony of Mr. Burke was that the defendant had a permit for the purpose of trapping, and on the Yellowstone. In view of the testimony that has gone in, it is not sufficient to hold him as having committed the offense charged. He took three beaver out when there were 700 that could be taken above Greycliff.''

At the trial the complainant Burke, as a witness for the state, testified:

''Q. Mr. Burke, Mr. Widdicombe had a general trapper's license, did he not? A. He had one. Yes sir.

''Q. And when they issue a trapper's license, does the Fish and Game Commission also issue district area allotments for beaver? A. District areas, they call it—yes, sir.

328

"Q. I will ask you to examine defendant's exhibit 'A', and ask you if that is what was issued by the Fish and Game Commission for the 1954-1955 season? A. Yes, sir.

"Q. I call your attention to the number '36' on the back of this exhibit, which reads 'Those portions of Park, Gallatin, and Sweet Grass Counties, including the Yellowstone River drainage upstream from the Town of Greycliff, shall be open to trapping for 700 beaver by General Beaver Season Permit only, from October 15, 1954, through April 30, 1955.' Were the beaver, these three beaver that you have seized, within that area? A. They were. Yes, sir.

"Q. And you stated that this was issued with the General Beaver Trapping Permit for the season 1954-55? A. Yes, sir."

While the complaint makes no mention whatever of any beaver traps, yet the witness Burke further testified that he seized a sack containing 21 beaver traps, which he found in defendant's truck in the town of Big Timber at which time, according to his testimony, the witness Burke told the defendant that it was unlawful for defendant to have such traps on the Yellowstone. The witness Burke also testified that after removing the traps from defendant's truck he delivered them to the sheriff at Big Timber.

The official highway map of Montana shows that the town of Greycliff, Montana, is ten miles east of Big Timber, Montana, on the Yellowstone River. Of such facts the courts take judicial notice. R.C.M. 1947, sections 93-501-1 and 93-1001-32; 31 C.J.S., Evidence, section 12, note 25, page 518. Thus it appears that defendant had a legal right to have beaver traps on the Yellowstone River,—to trap beaver at a point ten miles upstream from Greycliff and after so trapping the animals defendant had a right to retain possession thereof and of their skins and pelts as well as to possess the traps that were found in his truck.

On his cross-examination the witness Burke, in part, testified:

"Q. I know, but you, of your own knowledge, don't know

how many, when or where he had any traps set on the Yellowstone, do you? A. *No, I don't.*

"Q. You never looked, you never saw a trap set there, did you? A. No.

"Q. Then, of your knowledge, you don't know anything about whether there were any traps set there or not, do you, of your own knowledge? A. No."

The witness Warren Patten testified that he lived in Big Timber and was a deputy game warden in 1955; that he issued a beaver trapping permit to one Dick Curtis, as beaver damage was being done on Otter Creek about three miles south of the Curtis Ranch. According to the official map of Montana, Otter Creek is a "drainage upstream" from Greycliff which creek flows into the Yellowstone River about opposite the town of Big Timber.

The witness Patten also testified that he knew the defendant and that he saw him on the 7th and 12th of March, 1955, just opposite the Springdale bridge, coming off the Yellowstone River some 16 miles west of Big Timber. It follows that under the license issued to defendant he had a legal right to there trap beaver and to keep both the beaver there caught as well as their skins.

There is no evidence showing that defendant did not legal- trap the beaver or that he did not rightfully obtain the skins found in his possession under and by virtue of the license so granted to him by the Montana Fish and Game Commission.

The state's main and only serious contention is that under the provisions of R.C.M. 1947, section 94-7227, the trial court was not empowered to direct the jury to return a verdict for defendant, and that such court was merely clothed with the authority to advise the jury to acquit the defendant.

R.C.M. 1947, section 94-7227, supra, provides:

"When evidence on either side is closed, court may advise jury to acquit. If, at any time after the evidence on either side is closed, the court deems it insufficient to warrant a con-

viction, it may advise the jury to acquit the defendant; but the jury is not bound by the advice."

In support of its above contention the state relies upon several Montana cases, including State v. Thierfelder, 114 Mont. 104, 132 Pac. (2d) 1035, but a careful examination of the cases so relied upon shows that there was a substantial conflict in the evidence in such cases and not an utter failure or lack of evidence to establish the state's case.

In the case at bar there is no substantial evidence showing defendant had violated the law in the trapping of the beaver, or in his possession of the beaver or the skins or pelts thereof at the time of his arrest by the deputy game warden.

The instant case comes within the rule announced in State v. Welch, 22 Mont. 92, 55 Pac. 927, 930, wherein this court said:

"The record presents, not a case of mere insufficiency of the evidence to warrant a conviction, but one of utter failure of proof, and therefore the court should have granted the motion to instruct the jury to find the defendant not guilty. There is a distinction between insufficiency of the evidence to justify a verdict, and no evidence at all upon which to base it. [Louisville & Nashville R. Co. v. Woodson, 134 U.S. 614, 10 S. Ct. 628 [33 L.Ed. 2032]. In the one case the court may advise the jury to acquit the defendant, which advice the jury is not bound to follow (Penn. Code, section 2096), whereas in the other case it is the duty of the court to direct a verdict of not guilty." Penal Code, section 2096, supra, is now R.C.M. 1947, section 94-7227.

In State v. Gomez, 58 Mont. 177, 180, 190 Pac. 982, 983, this court said:

"Some of the circumstances proved, considered apart from the rest of the evidence, tend to incriminate the accused; but other circumstances, the proof of which cannot be questioned, so far explain and destroy the criminatory force of the former that they leave no substantial basis in the evidence for the conclusion that the accused had anything to do with the homicide.

In other words, there was no substantial evidence upon which to base a verdict of guilty. This being the condition of the evidence, if the case had been submitted to the jury and a verdict of guilty had been returned, it would have been obligatory on the trial court, on motion addressed to it, to grant the defendant a new trial. It was therefore its duty at the close of the evidence to order the jury, as it did, to return a verdict of not guilty. Territory v. Laun, 8 Mont. 322, 20 Pac. 652; State v. Welch, 22 Mont. 92, 55 Pac. 927; State v. Foster, 26 Mont. 71, 66 Pac. 565.''

In State v. Labbitt, 117 Mont. 26, 35, 156 Pac. (2d) 163, 166, this court said:

''When there is an utter failure of proof as to one or more of the essential elements of the crime charged, it is the duty of the trial court to order the jury to return a verdict of not guilty. State v. Welch, supra [cited above]; State v. Gomez, supra [cited above]. * * *

''We adhere to the rule announced by Mr. Justice Pigott speaking for this court in State v. Welch, supra. That rule indicates when a trial court may *order or direct* the jury to acquit and when, under section 11995, Revised Codes [1921, now R.C.M. 1947, section 94-7227], it may only advise the jury to acquit, and we therefore overrule any and all pronouncements to the contrary appearing in State v. Theirfelder, supra [cited above].''

The beaver, the skins, pelts, traps and other property seized, taken and withheld from the defendant W. L. Widdicombe, are ordered to be delivered and returned to said defendant forthwith and the attorney's fees, costs, expenses and outlays approved and awarded by the district court under Chapter 38, Laws of 1949, are ordered to be paid and delivered to defendant's court appointed counsel forthwith.

The order of the court directing the jury to return a verdict of ''not guilty'' is hereby affirmed and it is so ordered.

MR. JUSTICES ANGSTMAN, ANDERSON, DAVIS, and BOTTOMLY, concur.