STATE, RESPONDENT, *v.* WELCH, APPELLANT.

· [No. 1329. ᴵ

[Submitted Jan. 5, 1899. Decided Jan. 23, 1899.]

*Homicide—Accomplice—Evidence —Argument of Counsel— Harmless Error—Hearsay— Corroboration of Defendant's Testimony— Corroboration of Accomplice—Directing Verdict When There is Utter Failure of Proof.*

EVIDENCE—*Argument of Counsel.*—1.—Although a complaint filed by deceased against defendant's accessory is admissible to show a motive for the murder, it is error for the State's attorney to comment on the facts charged in such complaint as though they were true, although there has been incompetent evidence admitted tending to establish such facts.

SAME—*Harmless Error.*—2.—Where, on the trial of one charged as accomplice in a murder, a letter from defendant to deceased, asking him to meet him at a certain time and place is admitted, it is error to exclude evidence that defendant wished to meet deceased to settle a controversy between the latter and defendant's accomplice.

The exclusion of material testimony is harmless error, where it is afterwards admitted on cross-examination of the witness.

SAME—*Foundation for Introduction of.*—3.—Where, on the trial of one charged with being an accomplice in a murder, the State proved that letters had passed between defendant and the wife of his co-defendant, and defendant testified that he had destroyed the letters received by him, and that he had no reason for destroying them, except that that was his usual custom, sufficient foundation is laid for defendant to prove the contents of the letters.

SAME—*Hearsay.*—4.—In a murder trial, testimony that a third person had told witness that defendant had told such person that he had tried on several occasions to kill deceased, and would try again, is hearsay and inadmissible.

SAME—*Corroboration of Defendant's Testimony.*—5.—Where the photograph of the wife of defendant's alleged accomplice in a murder, found upon defendant, was admitted in evidence to raise an inference of criminal intimacy, it is error to exclude evidence to corroborate defendant's explanation of his possession of the picture.

SAME—*Corroboration of Accomplice.*—6.—Defendant, accused of having instigated a murder, was 50 miles away when it was committed. The murderer, between whom and defendant a hatred existed, testified that, some time before, defendant had told him that he was going to kill deceased. The only corroborating ·evidence was that defendant was very intimate with the person for whose benefit the murder was al-. leged to have been committed, and particularly with the latter's wife, with whom he

corresponded, and to whom he had sent money two days after the murder. *Held* in--sufficient, under Penal Code, Sec. 2089, providing that testimony of an accomplice-must be corroborated by evidence tending to connect defendant with the crime.

DIRECTING VERDICT—*Utter Failure of Proof.*—7.—Where there is a total failure of evidence to convict defendant, it is the duty of the court to direct a verdict of not guilty.

*Appeal from District Court, Custer County, C. H. Loud,. Judge.*

THOMAS WELCH was convicted of murder in the second de-gree, and appeals.    Reversed.

*O. F. Goddard, C. R. Middleton* and *Wm. H. De Witt,.* for Appellant.

*C. B. Nolan, Attorney General,* and *T. J. Porter,* for the-State.

**PIGOTT, J.**—Thomas Welch, George S. Geddes and Richard. Dixon, or Dickson, were accused, by information filed in the District Court of Custer County, of the murder of Clemence-Winfred Brown.    Upon his separate trial Welch was con-victed of murder in the second degree, and was sentenced to imprisonment for 20 years.    From the judgment of convic--tion, and from the order refusing a motion for a new trial, this appeal is prosecuted.

Most of the errors assigned by defendant were presented in. *State* v. *Geddes, ante* p 68, 55 Pac. 919, and are considered and disposed of in the opinion this day rendered in that case; hence only such points as are not determined in the Geddes. case, and are likely to arise in the event a new trial be had of this case, will be discussed.

1.    Over the exception of defendant, the court admitted in. evidence the information against George S. Geddes, filed July 20, 1897, charging him with assault upon decedent, and also the complaint, filed October 18, 1897, in an action brought. by decedent to recover damages occasioned by the assault.    If the defendant had conspired with Dixon, or with Geddes, to accomplish the murder of Brown, these documents would doubtless have been relevant, as tending to disclose a motive;

for the killing, and for no other purpose. Counsel for the State, however, employed this evidence for another and improper purpose. It is evident from an inspection of the transcript that the attorneys for the State were allowed, against the repeated objections of defendant, and over his exceptions, to comment on the information and complaint as if the allegations of each were true. This conduct was most prejudicial to defendant, and was error. Even in the heat of trial, and in the ardor of advocacy, county attorneys and their assistants ought to realize that their duty never requires them to disregard the rights of the defendant, and that when they seek, by deducing palpably unwarranted inferences from the proofs, to induce juries to return verdicts of guilty, the bound of official duty is overstepped. Prosecutors should never permit themselves to forget the obligation imposed upon them to refrain from perverting the evidence, even unwittingly, to the detriment of the defendant. It is true that the court permitted the negro, Dixon, to detail a conversation which he testified occurred between himself and George S. Geddes, at which the defendant was not present, and in which Geddes related the circumstances of the whipping administered by him to the decedent; and this is urged by the county attorney as warrant for the comments which have been mentioned; but, in the absence of a conspiracy, such evidence of the declarations of Geddes was hearsay; and, even had there been proof of a conspiracy, the declarations attributed to Geddes were mere recitals of a past act, done by Geddes prior to the time when the supposed conspiracy to kill Brown was formed, and therefore, as against Welch, would not be competent, as made in furtherance of the object sought to be accomplished by the conspiracy.

There is not a dearth of instances disclosed by the record in which counsel for the State urged, and succeeded in adducing, inadmissible testimony against the defendant; nor is the transcript barren of instances where they were instrumental in excluding material and competent evidence offered by defendant. Observing, as we have, the many hypertechnical and frivolous

objections interposed by the State, we are indeed impelled to the belief that the attorneys prosecuting, in their strong desire and excessive zeal to convict, were unconsciously disposed to regard as inadmissible much evidence which it was clearly the right of defendant to lay before the jury.

2. The State offered in evidence a letter, dated August 15, 1897, written by the defendant to the decedent, by which the decedent was requested to go to the O. W. ranch on the 21st of August, and in which the defendant said he wanted to see decedent on important business, and would depend upon him to be there, and that he would pay him well for his trouble, and would depend on him to go. The letter inclosed five dollars. The defendant offered to prove that he and George S. Geddes had had conversations in relation to effecting a settlement of the controversy that existed between Geddes and the decedent, growing out of the alleged whipping, and that he wrote the letter of August 15th for the purpose of meeting the decedent and bringing about a compromise of the trouble. This offer the court denied, and refused to allow the defendant to give any reason for having written the letter, or any explanation in respect thereof. In this there was error. In view, however, of the fact that the defendant subsequently, on cross-examination, succeeded in getting the matter offered before the jury, we are inclined to think the error was not a material invasion of defendant's rights.

3. The State having proved that letters passed between the defendant and Regina Geddes, both before and after the homicide, for the purpose of permitting the jury to infer that the letters contained something that might bear upon the murder, or as indicating a conspiracy between the correspondents to kill Brown, the defendant testified that he had destroyed the letters received by him, as was his universal habit as to letters that he received, and that he had no reason for destroying them, other than that such was his custom, and that none of the letters received by him could be produced. He then offered to prove the contents of the letters, and that they did not refer to the decedent or to the homicide. The court re-

jected the offer upon the ground that no foundation had been laid for their introduction. Secondary evidence was, under these circumstances, admissible, and its exclusion was error, which we cannot say was without prejudice to the defendant; for the jury was allowed to infer a correspondence in relation to decedent, and towards the consummation of a conspiracy to take his life. It is true that the defendant voluntarily destroyed the best evidence of their contents, which was the letters themselves; but a reasonable explanation was given, which, if believed, would repel the inference of a design to destroy that which might possibly contain evidence tending to prove guilt. Although the mere fact of a correspondence between the defendant and Regina Gedges would not seem to justify an inference by the jury that there was a conspiracy to take the life of Brown, yet the argument of counsel for the State, and their conduct of the case, indicate the purpose to have been as stated.

4. One of the gravest errors in the admission of evidence is found in the action of the court permitting Dixon to testify that Regina Geddes had declared to him that the defendant had told her, in a conversation concerning the decedent, that defendant had "laid four days at one time for that boy, and eighteen hours at another; that he was going to rig himself in a blanket, and play Indian on him, and kill him;" and that she told witness "that Tom Welch told her that, after he had killed one man, it was nothing to kill another one." All this evidence was hearsay, and was well calculated to have weight against the defendant in the minds of men not accustomed to sifting and weighing testimony.

5. When apprehended, there was found upon the person of defendant a photograph of Regina Geddes, which was introduced in evidence by the State. Although defendant was permitted to explain by his own testimony the circumstances attending his possession of the picture, the offer to corroborate his statement by the testimony of one Miller was denied. This was error. The sole purpose the State could have had in using the picture before the jury was that they might be afforded

the privilege of inferring an intimacy, possibly criminal in its nature, between Welch and the wife of George Geddes. In admitting the photograph the court practically advised the jury that it was proper evidence for them to consider, and that they might place upon the circumstances of its possession by defendant any construction they saw fit, and then, by refusing to permit Miller to testify in the matter, tacitly intimated to the jury that the defendant had not the right to explain it except by his own evidence, as to the weight of which in general the jury were given the usual instructions.

6.   The principal witness for the State was the negro, Dixon, the self-confessed murderer of Brown.   That Welch was not present when the murder was done is admitted.   He was approximately 50 or 60 miles distant from the scene of the murder at that time; it follows, therefore, that unless he aided and abetted, or advised and encouraged, its commission, he is not guilty.   Dixon testified that in a conversation between himself and Welch held about August 28, 1897, Welch, in answer to the remark of Dixon that the former was riding a fine horse, said, referring to decedent: "Yes; that is the horse that I rode down here to rope that son of a bitch on.   I am going to get him to run him, and rope him, and take my dallies, start the other way, and jerk him off."   This item of evidence, of itself, tends in no wise to connect Welch with the murder committed by Dixon in November, 1897.   It does not tend to prove, in itself, that Welch aided, abetted, advised or encouraged Dixon to commit the crime; and there is no other competent testimony given by this witness which, by any reasonable interpretation, can be deemed to implicate Welch.   It does appear that defendant was an intimate friend of Geddes and his wife; that he visited their home at unusual hours; that he corresponded with Regina Geddes; that two days after the homicide he sent a check to her for $50, which on November 8th, while in company with him, she cashed at a bank in Miles City; that on the 6th of the same month he asked for a letter written by him to Mrs. Geddes, and deposited in the postoffice; and that, after receiving it from the postmaster,

he destroyed it, as was his custom in respect of other letters. It further appears that the negro, Dixon, disliked Welch, and that Welch entertained a hatred of him. Manifestly these facts fall far short of establishing, or tending to prove, the guilt of the defendant. Assuming, however, that the evidence of Dixon, his supposed accomplice, tends to show that Welch encouraged him to do the murder, still the declaration of Section 2089 of the Penal Code, that a conviction cannot properly be had "on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof"—would effectually prevent a conviction which could withstand the scrutiny of the courts, for the reason that the evidence other than that of Dixon fails to connect Welch with the commis sion of the murder. But it is unnecessary to place the determination of this question upon the absence of evidence corroborating the accomplice. The record consists of more than 600 pages. We have read it with the greatest degree of care. In the effort to discover the existence of some reason which may have led the jury to return a verdict against the defendant, the evidence has been analyzed, and it has been accorded every fair, and even liberal, inference against him. Mindful of the rule that the jury had the opportunity, not enjoyed by this Court, of seeing the witnesses, of hearing them testify, and of observing their bearing upon the stand; appreciating, also, the fact that the jury are the judges of the weight of the evidence and the credibility of the witnesses, and that their determination of an issue of fact ought not lightly to be disturbed—our earnest attention has been devoted to a painstaking examination of the testimony, the further recital of which would serve no useful purpose. We have searched the record in vain for proof of defendant's guilt. It is the deliberate opinion of this Court that there was no competent evidence whatever upon which to base a conviction. There was not

even a scintilla of evidence having a tendency to induce reasonable and unprejudiced men to believe that Welch aided, abetted, advised or encouraged the murder of Brown, or that he conspired with either the actual murderer or with any other person to that end. The verdict was clearly the result of passion and prejudice, doubtless caused, or at least inflamed, in some degree, by the incompetent hearsay declarations testified to by the negro as having been made to him by Regina Geddes. The record presents, not a case of mere insufficiency of the evidence to warrant a conviction, but one of utter failure of proof; and therefore the court should have granted the motion to instruct the jury to find the defendant not guilty. There is a distinction between insufficiency of the evidence to justify a verdict, and no evidence at all upon which to base it. (*Louisville & Nashville R. Co.* v. *Woodson,* 134 U. S. 614, 10 Sup. Ct. 628.) In the one case the court may advise the jury to acquit the defendant, which advice the jury is not bound to follow (Penal Code, Sec. 2096), whereas in the other case it is the duty of the court to direct a verdict of not guilty.

The other questions presented are covered by the opinion in the Geddes case, or are such as are not likely to arise upon a new trial.

The judgment of conviction and the order appealed from are reversed, and the cause is remanded to the District Court, with direction to grant a new trial.

*Reversed and remanded.*

BRANTLY, C. J., and HUNT, J., concur.