STATE, RESPONDENT, *v.* WELLS, APPELLANT.

(No. 2,177.)

'(Submitted November 10, 1905.  Decided November 27, 1905.)

*Criminal  Law — Grand  Larceny — Evidence — Conspiracy — Declarations—Cross-examination—Instructions.*

Grand Larceny—Evidence.

1.  In a prosecution for grand larceny, of which defendant was charged jointly with two others, evidence which showed knowledge on the part of the defendant and his associates of the prosecuting witness' possession of the property taken; their destitute condition at, and for some time prior to, the date of the crime; an opportunity to commit the theft; the defendant's intimacy with his associates; the fact that one of them had pawned a watch stolen from the prosecuting witness and that defendant furnished the money to redeem it; the deposit by the defendant of bills the same in number and denomination as those stolen; and his inability to explain satisfactorily how he came by them, *held,* sufficient to establish the larceny, and to go to the jury upon the question whether or not defendant was connected with it as an aider or abettor.

Grand Larceny—Evidence—Declarations.

2.  While, after the purpose of a conspiracy has been accomplished, evidence of acts or declarations of defendant's associates, as against the defendant, is hearsay, yet where, in a prosecution for grand larceny, information was elicited by the prosecuting witness from one of the associates of defendant, as to the whereabouts of one of the articles stolen, without being told how it came to be at the place indicated, evidence of such information was properly admitted as relevant to the inquiry whether in fact a larceny had been committed.

Grand Larceny—Evidence—Harmless Error.

    3. Where, in a prosecution for grand larceny, the principal fact—the larceny—had been established, and the inquiry was as to the defendant's guilty connection with the theft, the admission in evidence of statements made to the prosecuting witness by one of the defendant's associates in the crime, as to the whereabouts of one of the articles stolen, if error, was error without prejudice, since the evidence in nowise incriminated the defendant.

Grand Larceny—Evidence—Cross-examination—Impeaching Witness.

    4. The complaining witness in a prosecution for grand larceny was examined before a committing magistrate, his testimony reduced to writing, and signed by him. His statements at the trial showed a discrepancy between his testimony formerly given and the facts then sworn to as to certain particulars. The question was thereupon asked him on cross-examination whether his testimony at the preliminary examination was true or false. *Held,* that the answer to this question was properly excluded, since the purpose of the statute (Code of Civil Procedure, sections 3379, 3380) had been served by calling the discrepancy to the attention of the jury, who were the judges of the credibility of the witness.

Grand Larceny—Instructions.

    5. Defendant in a prosecution for grand larceny may not complain on appeal that an instruction, to the effect that the question whether he was an accomplice with his associates in the crime, or either of them, was solely for the jury to determine, had not been given in the exact form requested by him, if one in substance to that effect was submitted.

*Appeal from the District Court, Chouteau County; John W. Tattan, Judge.*

WILLIAM W. WELLS was convicted of grand larceny. From the judgment and an order denying him a new trial he appeals. Affirmed.

*Mr. F. E. Stranahan,* for Appellant.

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant was by information charged jointly with his brother Samuel E. Wells, and one Frank Allen, with the crime of grand larceny. He demanded and was granted a separate trial, and as a result thereof was convicted and sentenced to a term of four years in the state prison. From the judgment and an order denying him a new trial he has appealed.

The integrity of the judgment is assailed upon the grounds that the verdict is contrary to the evidence; that the court erred in admitting and excluding evidence; and that it prejudiced the defendant by refusing to submit a certain instruction requested.

1. The larceny charged is, that the defendants feloniously took, stole and carried away $95 in money, of the value of $95, and a nickel case Waltham watch, of the value of $30, of the personal property of one J. H. Brady.

The state's theory of the case is, that on February 14, 1904, J. H. Brady and the accused were together, going from one saloon to another in the village of Havre, in Chouteau county, and indulging in drink; and that the three defendants discovering that Brady had the watch and a considerable sum of money upon his person, conceived a plan to steal them from him and did so while he was stupefied by drink. There is a suggestion, also, that he was drugged during the course of the orgy. The evidence is entirely circumstantial.

While not controverting the claim that the property was stolen by Allen, one of the accused, counsel for this defendant contends that the evidence wholly fails to connect him with the taking. This contention we. do not think meritorious. While the evidence in this connection is not as convincing as it might be, the incriminatory circumstances proven made out a case for the jury.

It appears that early on the evening in question, Brady and the accused casually met at a saloon. They had had some previous acquaintance, but their relations had not been intimate. They there began to drink. Brady had on his person the watch in question, and $102 in bills, among which were three of the denomination of twenty dollars, and the rest were of smaller denominations. The accused had no money. The drinking was all at the expense of Brady. That he had the property on his person became known to his associates by the fact that he carried the watch in sight, and during the course of the evening exhibited the roll of money. All of them are

laboring men, but for the time being the accused had no employment and were destitute; indeed, so destitute that for some days they had been dependent for drinks and meals upon the kindness of acquaintances in the village, the defendant and his brother in one or two instances using a borrowed meal ticket. The Wells brothers had been spending their nights in the saloons and sleeping as best they could. During the evening Allen borrowed $1.25 from Brady. This he spent for drink. They continued drinking until about 2 o'clock on the morning of the 15th, going from place to place. At this time the four left the last place they visited. Brady was much intoxicated. When they had gone a short distance they were seen by the bartender, who seems to have watched them, out in the middle of the street, two of the accused having their arms about Brady, and the other standing near. Brady testifies that about this time he lost consciousness and knew nothing until he woke at his room at the hotel, about 10 o'clock on the morning of the 15th. It appears from other evidence that he went to his hotel and room about 2 o'clock. When he woke and dressed, he found his money and watch gone. He went in search of his associates of the previous night and early morning. He first found Allen and ascertained from him that the watch could be found at a pawnshop. It was found there and shown by other evidence to have been pawned by Allen. Immediately after this conversation between Brady and Allen, the latter went and found the Wells brothers. He obtained money from the defendant to redeem the watch. At the time he preferred his request for the money the defendant demurred, but upon being urged by his brother, finally furnished $2.50, the amount obtained on the watch by Allen. The conversation among the accused on this subject occurred in the rear of one of the saloons visited on the previous evening and was conducted in whispers.

Early on the morning of the 15th, the defendant went to a saloon kept by one Hinote and deposited with him for safekeeping $50 in bills. He had in his possession at that time three twenty dollar bills; one of these he had changed, leaving

the other two with a ten dollar bill. During the morning he and his brother also paid some small bills theretofore contracted for drinks and small amounts in money borrowed at different saloons.

The defendant himself was sworn and testified. His statements tended to contradict in a measure some of the facts detailed by the other witnesses. But his account of the night's doings is vague and contradictory of itself, as well as unreasonable in the light of some significant facts which are clearly established. For illustration: In explaining his possession of the bills next morning, he said that he had been saving the money for some time in order to pay his expenses to The Dalles, Oregon, where he intended to go to shear sheep as soon as the season opened. Though the opportunity was given him to tell the source from which he obtained the money, he failed to do so. He had recently been at Fort Benton, Chouteau county, and had been employed there a short time, but his earnings had been small, and he had left the place without paying for his current board bill, and had borrowed money enough to pay the expenses of himself and his brother to a village in an adjoining county. He explained that he had been keeping the money which was deposited at Hinote's saloon, upon his person, but had concluded that since he had begun to drink, he had better put it in a safe place, so that he would not "blow it in." At the same time he kept out $10 for spending money.

Upon these facts we cannot say that the verdict is contrary to the evidence. There was knowledge on the part of the defendant and his associates of Brady's possession of the property. There was clear proof of their destitute condition at and for some time prior to the date of the crime. There was likewise the opportunity to commit the theft, and the defendant admitted his intimacy with his associates. There was also the fact, well established by the independent testimony of the pawnbroker, that Allen had pawned the watch early on the morning of the 15th, and that the defendant had furnished him

with the money to redeem it. Coupled with these facts was the deposit by the defendant on the early morning of the 15th of the bills, the same in number and denomination as those in Brady's possession when last seen in his coat, and his inability to explain satisfactorily how he came by them.

The evidence was sufficient not only to establish the larceny, but also sufficient to go to the jury upon the question whether or not the defendant was connected with it as an aider or abettor.

Counsel compares the facts in this case with those in the case of *State* v. *Whorton,* 25 Mont. 11, 63 Pac. 627, and insists that they are strikingly similar. A just comparison of the two cases, however, reveals a wide difference. The only incriminatory facts shown in that case were an opportunity to commit the theft, though not very convenient, because at all the times when the defendant might have had an opportunity, other persons were present who were above suspicion; the possession by the defendant two or three days afterward of coins of the same denomination as those which were claimed by the prosecuting witness as having been stolen from him; and some slight evidence tending to show that the defendant had stated previous to the larceny, that he was without money.

2. Brady testified as a witness. He stated that on February 15th, when he discovered his loss, he went to seek the accused. He found Allen at a saloon playing cards. The two retired together to a side room and there had a conversation. The court, upon objection, excluded the details of the conversation, but permitted Brady to state that he learned from Allen that the watch was in a pawnshop. Allen gave no information as to how it came to be there. The contention is made that the admission of this evidence was error.

The objection made was "upon the ground that it [the evidence] is immaterial and irrelevant, unless the getting of the watch to the pawnshop is connected with this defendant." It will be noticed that the objection was not made on the ground that the evidence offered was hearsay, and therefore incompe-

tent. It is pregnant with the admission that the evidence was not only competent, but also material and relevant, provided other evidence introduced tended to connect the defendant with the larceny. As against the defendant, any act or declaration of Allen at that time was hearsay and incompetent, for the object of the conspiracy had been accomplished. The rule is elementary, that after the purpose of the conspiracy has been accomplished and the joint enterprise completed, evidence of acts or declarations of one of the co-conspirators is not admissible as against another. Such evidence is hearsay. But the evidence here offered was certainly relevant to the inquiry whether in fact a larceny had been committed. Without proof of this fact a conviction could not be had at all. The other circumstances proven were sufficient to go to the jury, as tending to show the defendant's guilty participation, and we think that the ruling upon the objection, as made, was correct.

But conceding, for the purpose of argument, that it was wrong, it was established by evidence uncontroverted and unquestioned, that the larceny had been committed by some one. It was also established by independent evidence that Allen had pawned the watch. The principal inquiry was whether the defendant had guilty connection with the theft of it. The information imparted by Allen did not tend even remotely to aid this inquiry, and without the aid of other facts, established by independent proof, it did not even tend to inculpate Allen himself. The principal fact—the larceny—having been clearly and indubitably established by evidence other than that in question, and the information imparted to Brady not tending in any way to incriminate the defendant, we think the error, if error at all, was without prejudice.

3. The accused were arrested on February 15th. They were examined by a committing magistrate on the 16th. Brady was at that time examined as a witness. His testimony was reduced to writing and signed by him. There was a discrepancy between his statements at that time and those made at the trial, as to the amount of money he had in the roll of

bills and the amount thereof he had spent during the evening, the question being whether of the $102 he claimed to have at the time he began to drink with the defendants, he had spent five or ten dollars. After he had identified his written statement and the discrepancy had been called to his attention, he was asked by counsel for defendant: "Is the testimony which you have read from your testimony at the preliminary examination, true or false?" The witness was not allowed to answer. Upon further examination he denied that he had made the statement therein to which his attention had been called. Incidentally, he explained that he was not in condition to testify at the time of the examination owing to the orgy beginning on the night of the 14th. The deposition was introduced in evidence. Complaint is made that the court erred in not permitting the witness to answer. We think there was no error. The purpose sought was to impeach the witness. The discrepancy between his statements on the different occasions was brought clearly to the attention of the jury. It was for the jury to determine whether the witness told the truth, taking into consideration all the circumstances and the explanation of the discrepancy offered by the witness. The right of cross-examination should not be restricted, but the purpose of the statute (Code of Civil Proc., secs. 3379, 3380) is served when the contradiction has been made to appear.

4. The court was requested to instruct the jury that the question whether the defendant was an accomplice with the others charged in the information, or either of them, was solely for them to determine. Complaint is made that this was not done. In this counsel is mistaken. It is true that the instruction was not submitted in the exact form requested by counsel, but it was, in substance, and, taking the charge as a whole, it fairly and fully submitted all the issues in the case.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE MILBURN and MR. JUSTICE HOLLOWAY concur.