THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, v.
BILLY DON YOSS, DEFENDANT AND APPELLANT.

No. 10903.
Submitted October 19, 1965. Decided December 27, 1965.
409 P.2d 452.

William D. Morris (argued), Butte, for appellant.

Forrest H. Anderson, Atty. Gen., James R. Beck, Asst. Atty. Gen. (argued), Helena, Chester L. Jones, County Atty. (argued), Virginia City, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from the district court of the Fifth Judicial District of the State of Montana, in and for the County of Madison, the Honorable Philip C. Duncan presiding. The appeal results from a jury trial which found the defendant guilty of two counts of the crime of burglary.

The facts are simple and undisputed. Mr. and Mrs. Bill Maupin were employed by a rancher in Madison County and rented a home on the ranch located very near the County boundary lines of Madison and Silver Bow Counties. During the summer of 1964 it was necessary for Mr. Maupin to spend considerable time in the mountains with the cattle so he took his wife and child to the mountain camp and they locked their home and a garage located nearby. It was necessary for Mr. Maupin to return to the home for supplies and on one such trip on August 11th he found that both the house and garage had been broken into, and that numerous personal items and household equipment were missing. Mr. Maupin testified that his last trip to the home had been on July 29th and that at that time he had locked the doors of both the house and the garage.

Upon discovering the break-in he notified the sheriff's office and arranged to meet with the sheriff the next day. He then returned to the summer camp, got his wife, and they returned and made the list of things missing out of the two buildings. Numerous things had been taken, Mrs. Maupin put the estimate of loss at $800 to $1,000, but of import to this case was a sword, an Underwood electric sewing machine, and a box of Blackhawk tools. The tool box of Bill Maupin had a special mark on it, "BM." A rather complete list of the missing items was given the investigating officers and deputy sheriff Guy Hulse was assigned the investigation.

Deputy Hulse contacted officers of all the nearby counties, cities, checked second hand stores and while checking the items in Quigley's Auction Barn located near Butte, Montana, he came across the stolen sewing machine which he was able to identify by its serial number. From Mr. Quigley he learned that the defendant had "hocked" the machine and from him he learned where the defendant lived. With this information he returned to Virginia City and the next morning a complaint charging the defendant with "receiving stolen goods" was secured from the justice court along with a warrant for the defendant's arrest. With the warrant, two deputies in separate cars went to Butte to find and have the defendant arrested. The Maupins went with one of the deputies.

It so happened that on the morning that the Madison County law officers were coming to Butte to locate the defendant he was in the sheriff's office on another matter and when a radio message was received by the sheriff from one of the Madison County officers he arrested the defendant and held him awaiting their arrival.

When questioned by Deputy Sheriff Hulse, after he had been advised that he could have counsel, the defendant told the officers that he had purchased the sewing machine from an Indian at a Bar in Butte. While being questioned he was asked if he would authorize a search of his home and when he said

yes a document entitled "Voluntary Consent of Search" was drawn up in the Silver Bow County Sheriff's office signed by the defendant and witnesses. It read as follows:

"I, Bill Don Yoss, after having been advised of my rights to an attorney, do voluntarily give consent to Undersheriff Ernest Bullock of the Madison County Sheriff's Office, Deputy Sheriff Guy Hulse, Silver Bow County Deputy Sheriffs Harry Romero and Anor Nelson, to search my home and premises at 1925 Walnut Street, Butte, Montana, in regard to various appliances and utensils which were stolen from the Maupin Ranch near Melrose, Montana. Dated this 14th day of September, 1964.

"Billy Don Yoss

"/s/ W. L. Buckham    9-14-64
    Witness

"/s/ Joe Casaratt    9-14-64"
    Witness"

After arrest, and at the time of trial, defendant alleged that this authorization was given under duress.

Having obtained his permission to search his home officers of both Silver Bow and Madison Counties and the Maupins proceeded to defendant's home. On the way from the sheriff's office the defendant was asked whether he had purchased anything else from the Indian and he said "Yes, a sword." When they arrived at the house the defendant told his wife to get the sword which was positively identified by the Maupins as their sword.

During the search of the house Deputy Sheriff Hulse found the tool box in a closet covered by articles of clothing. The following testimony covers the Hulse version of the tool box.

"Q. And what was it that he said to you about the tool box? A. I asked where the tool box came from. He said his brother-in-law gave it to him in California, and I said 'That puts your brother-in-law just as deep as you are in this case.' He said, 'Yes, he is much deeper. He's dead.' " Testimony at the trial

revealed that the brother-in-law had been killed in an accident during the summer.

After search of the house, the defendant was taken to Virginia City, Montana, on the charge of "receiving stolen goods." He remained in jail overnight and got a bondsman so that he could get released from jail. About ten days later he went back to Virginia City to request time to get an attorney and at that time he was notified, and served papers charging him with two counts of burglary plus his prior conviction. The original charge of "receiving stolen property" filed in the justice court seems from the record to have been dismissed. The information charging the two counts of burglary charged that the burglaries occurred "on or about the 4th day of August, 1964" which date is about half way between the date Mr. Maupin testified he locked the home and garage which was July 29th, and the date of August 11th when he discovered the break-in.

Testifying at the trial, the defendant attempted to show that he was not in the area during part of the time and also tried to show that he was working during the rest of the period. The State on rebuttal tried to prove that he could have committed the burglaries during the period in question by showing from his time cards at the mine the days he did not work.

While the defendant failed to set forth any specifications of error as required by Rule X(3), (c) of this court his brief presents the following questions arising from the case.

1. Was there an illegal search of the defendant's home?

2. Was there sufficient evidence to take the case to the jury?

The appellant contends that the search of his home was illegal due to the fact the warrant of arrest was void because the complaint from which the warrant issued was for "possession of stolen goods" a crime not provided for by the laws of Montana; that the search was illegal because the consent he gave to make the search was obtained by coercion; too, the consent did not include the owners of the property which was

stolen who went along with the officers at the time of the search.

Judge Duncan held a hearing on defendant's motion to suppress the admission of all evidence obtained after the arrest, and found the motion to suppress was not well-taken. While not deciding whether or not the first arrest was legal we do find that the consent given in this case abrogates the question of the legality or illegality of the search. The question of the legality of evidence being introduced based on an illegal arrest arises when the search is made as an incident to the arrest. Under such circumstances, if the arrest is illegal, then the search that is made incident to it is illegal arrest and the "poisoned fruits" of that search can be suppressed by proper motion. Such is not the case here where the defendant consented to the search. People v. Burke, 47 Cal.2d 45, 301 P.2d 241; People v. McClean, 56 Cal.2d 660, 16 Cal.Rptr. 347, 365 P.2d 403.

The defendant's next position on the legality of the arrest goes to the question of whether or not the permission to search his home was coerced from him.

Concerning this allegation he testified as follows:

"Q. Was any request made of you at that time? A. They was holding me in the county jail; when the Virginia City deputies come over they took me to the Sheriff's office. They told me to walk around behind the counter there and there was a fellow there typing these notes up. Well, then they told me to go in this other room and there was the two deputy sheriffs from here and two deputies from Butte and then the head sheriff from Butte took me in this room. In a few minutes this other deputy from Butte come in, the one that was typing this paper up. They put it down in front of me and told me, says, 'Will you sign this?' and I looked at it and they told me they says, 'Either you sign it or we go to Court anyway and get a search warrant to search your house,' so I signed it and told them to go ahead."

Neither the fact that he was informed that a search warrant could be obtained if he refused to consent to the search or the fact he was under arrest at the time he gave his consent will per se make the given consent coerced. Here the consent was given after the officers had informed him that they would obtain a search warrant if he refused to let them search his home so the waiver is both voluntary and competent. Simmons v. Bomar, (U.S.D.C.Tenn.1964) 230 F.Supp. 226; Simmons v. State, 210 Tenn. 443, 360 S.W.2d 10; Commonwealth v. Wright, 411 Pa. 81, 190 A.2d 709. Concerning the giving of the consent while under arrest the cases generally uphold the view that such facts do not per se make the consent involuntary. This court has held in a long line of cases, the most recent being State v. Nelson, 130 Mont. 466, 304 P.2d 1110, that if one consents to have his premise searched by an officer without a search warrant he cannot complain of it as an illegal search. State ex rel. Muzzy v. Uotila and Certain Intoxicating Liquors, 71 Mont. 351, 229 P. 724.

We find no merit to defendant's contention that the fact Mr. and Mrs. Maupin accompanied the officers at the time of the search, but were not listed on the voluntary statement given by him would make the search illegal. There is no showing of any prejudice arising from their being present.

Concerning the second proposition presented, the sufficiency of the evidence, and the court's failure to direct a verdict for the defendant, we find no merit to defendant's position.

A directed verdict in a criminal case in this jurisdiction is given only where the State fails to prove its case and there is no evidence upon which a jury could base its verdict. State v. Widdicombe, 130 Mont. 325, 301 P.2d 116; State v. Welch, 22 Mont. 92, 55 P. 927; State v. Rother, 130 Mont. 357, 303 P.2d 393.

A review of the evidence indicates that there was substantial evidence presented upon which the jury could base its verdict. There can be no question but that the Maupin home

and garage were broken into and burglarized by someone, therefore, the corpus delicti was established. Some property was found and identified, so consequently, in view of all the circumstances the jury could believe that the defendant had obtained it by a burglary. Certainly the defendant's explanation of how he came into possession of the property was a matter for the jury to believe or disbelieve. They chose the latter course. This court said in State v. Sparks, 40 Mont. 82, 105 P. 87: "Burglary is one degree removed from larceny; but, when the facts proven warrant the finding of the larceny, and the surrounding circumstances are such as to show that the larceny could not have been committed without the felonious entry, the evidence is sufficient to warrant the finding of burglary also." And, again quoting from State v. Sparks, supra, the court said: "* * * It has been held by this court, following the rule recognized by the courts generally, that mere possession of property recently stolen is not sufficient to convict the possessor of a larceny of it. Territory v. Doyle, 7 Mont. 245, 14 Pac. 671; State v. Sullivan, 9 Mont. 174, 22 Pac. 1088; State v. Wells, 33 Mont. 291, 83 Pac. 476. When, however, this fact is supplemented by other facts inconsistent with the idea that the possession is honest, such as the giving of a false and improbable explanation of it, or a failure to explain, when a larceny of the property is charged, or the possession of a forged bill of sale, or the giving of a fictitious name, or the like, a case is made sufficient to submit to the jury. Territory v. Doyle, State v. Sullivan, State v. Wells, supra. The rule as to the materiality of such evidence is well stated by the Supreme Court of Maine, in State v. Bartlett, 55 Me. 200, as follows:

" 'If a person accused remains silent when he may speak, he does so from choice, and the choice he makes upon such occasions has always been regarded competent evidence. It is the act of the party. From time immemorial the reply or the silence of the accused person, when charged, has been regarded

as legitimate evidence on his trial for the consideration of the jury. Any act of his, when charged, tending to sustain the charge, may be proved. Fleeing from arrest, giving contradictory, untrue, or improbable accounts of the matters in issue, and refusals to account for the possession of stolen property, are evidences of guilt admitted upon the trial of the persons accused. These are proofs derived from the prisoner's act, sayings, and silence.' "

The judgment of the lower court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE, ADAIR and CASTLES concur.