# THE STATE OF MONTANA, Plaintiff and Respondent, v. RANDALL GENE BRADEN, Defendant.

### No. 11616.
### Decided October 9, 1969.
### Rehearing Denied October 27, 1969.
### 460 P.2d 85.

Kenneth R. Neill (argued), Great Falls, for appellant.

Robert L. Woodahl, Atty. Gen., Helena, Gene B. Daly, Co. Atty., Ralph T. Randono, E. F. Gianotti, Great Falls, John C. Weingartner, Asst. Atty. Gen. (argued), Helena, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This appeal results from a robbery conviction.

The appellant, Randall Gene Braden, at the time of his arrest in a stolen vehicle was 17 years, 8 months old. This was not his first encounter with the law. Testimony given at the time of his sentencing revealed that as a juvenile he had spent several years at the State Industrial School for Boys at Miles City; that he had escaped 4 times and was an escapee at the time of his arrest. The presentencing hearing also brought forth evidence that he had had psychiatric care at Miles City and following his arrest in Great Falls he had been sent to the state hospital for observation and care. Tests given at both institutions gave him an IQ rating of 122. These factors are of import in view of several issues raised on this appeal.

At the time appellant was stopped, while driving a stolen vehicle, he tried to escape and was apprehended by the arresting officer after a chase of several blocks. Upon arrest he gave his name as Randy Haglund, his age as 18 and his home address as San Jose, California. As soon as he could catch his breath, the arresting officer read the Miranda warning to appellant and received an affirmative answer as to whether or not he understood his rights. Appellant gave the arresting officer his Great Falls address at the time he was booked for "Grand Larceny". Officer Brown, the arresting officer, then went to this address and found the door of the apartment, which opened onto the street, open. At this time he noted a television set in the front room and several towels on a couch. These towels had the name "Capitol Motel" printed on them.

Officer Bowen returned to police headquarters where he consulted Detective Hall. The two officers returned to the apartment and Detective Hall, while seated in the police car, also noted the articles above mentioned. The two officers then returned to the police station and called Helena to check on whether or not the Capitol Motel was missing any towels or other property. They were informed that several nights before a TV set and some towels had been removed from one of the motel's units. Further, the car which appellant was driving at the time of his arrest had disappeared from a Helena residence on the same evening the articles had been taken from the Capitol Motel.

With this information the two officers interviewed the appellant, first giving him the Miranda warning. The officers stated that at this time the appellant admitted the theft of the articles from the Capitol Motel and requested the officers to pick up his clothes at the apartment and bring them to the police station.

The officers again returned to the apartment and while in the process of packing appellant's clothes came upon a face mask and certain articles of clothing similar to those of a man who had robbed a Great Falls service station 2 nights previous to

the arrest of appellant. These articles were separately tagged and upon return to the police station they again interviewed the appellant concerning the robbery of the service station, but before doing so they again gave the Miranda warning. Detective Hall testified: "I advised him of his rights and told him then that I thought he should obtain an attorney."

There was a telephone available to appellant and though the record is not clear it would appear he tried to call a bondsman and may have called one attorney.

Over the objection of appellant, the articles of clothing were admitted into evidence at the trial. At the trial one George E. Vaughn, the bookkeeper on duty at the service station at the time of the robbery, testified. Mr. Vaughn was an unusual witness for in his 58 years he had served as a sheriff in Idaho, had been superintendent of the state police of Idaho, had served during W.W.II in Naval Intelligence and before coming to Montana had served as the Idaho State Safety Director. As a result of his experience and training in law enforcement he was an unusually perceptive witness.

Mr. Vaughn testified that at about 4:00 a. m. the morning of March 28, 1968, a man jumped him with a club and threatened "to knock my goddamn head off * * * if I didn't hand the money over." This being the 4th time he had been robbed at that station, he immediately complied and turned over some $275. He further testified that before leaving the robber ordered him to another room made him lie down on the floor, and then pulled the telephone cords out of the wall. As soon as he could Mr. Vaughn went to a nearby pay telephone and called the police.

Vaughn gave the following description of the robber: About six feet tall, about 180 pounds, wearing a blue coat, tan pants, tan shoes and that the face was covered by a blue mask.

The State introduced into evidence the shoes taken from appellant's apartment and asked Vaughn if he had ever seen them before. He testified: "The shoes I saw that night were of this

type. I don't know the correct name for the shoes, but it was a thick leather sole and it was rough brown surface. Wasn't a smooth surface leather. I could see the two eyes or holes where they would be laced. It was lower than a regular work shoe, halfway between. Wasn't an oxford type * * * These are identical to the ones that I saw that night. I remember this leather here on the side—it's very unusual to see a shoe like that. I noticed that that night. They are identical to the ones I saw that night."

Concerning the jacket, hood, and pants recovered from appellant's apartment, Vaughn testified that they were identical to those worn by the robber.

The issues presented for review on this appeal are:

A. Whether exhibits 1, 2 and 3 were obtained as the result of an unlawful search and seizure and therefore should have been excluded?

B. Whether evidence of other crimes should have been excluded?

C. Whether the verdict is consistent with the law and the evidence and the evidence is sufficient to support a verdict of guilty?

D. Whether conclusions of the officers recorded on exhibit tags should have been excluded?

It should be noted prior to the discussion of the issues raised on appeal that the district court held a full pretrial hearing on the appellant's motion to suppress covering issues A and B.

▉ For the purposes of discussion issue A will be discussed under subissues: (1) Is section 95-1002, R.C.M.1947, mandatory under this factual situation? (2) If not, did the trial court err in admitting the exhibits recovered from appellant's apartment?

(1) Section 95-1002, R.C.M.1947, reads as follows:

"*Waiver of counsel.* A defendant may waive his right to counsel except that in all felony cases where the defendant is under eighteen (18) years of age the defendant shall be represented by counsel at every stage of the procedings."

Section 95-1002 is a new provision of the Montana Criminal Code further extending protections provided by the 6th Amendment to the Constitution of the United States and Art. III, § 16 of the Montana Constitution. It is of import to note the comment of the Criminal Law Commission in regard to this provision:

"This section is intended to protect the young and unwary who may not realize the importance of the advice and assistance of a lawyer. Also it is intended that the court may appoint counsel where the defendant lacks the intelligence or education to realize the importance of an attorney in the defense of a criminal charge."

We hold that under the fact situation here the statute is not applicable. The facts fully developed at the pretrial hearing and at the trial support the trial judge's decision.

(2) We find no error in the admission of the exhibits obtained from the appellant's apartment. The record clearly indicates the appellant was given not only one Miranda warning but three during the course of the investigation which developed into a charge of robbery from an arrest for grand larceny of an automobile.

Section 95-701, R.C.M.1947, recognizes this kind of a search and seizure as lawful even though no warrant was issued where, as here, the appellant gave his consent.

This Court in State v. Yoss, 146 Mont. 508, 409 P.2d 452, set forth Montana's law regarding search and seizure by consent:

"Neither the fact that he was informed that a search warrant could be obtained if he refused to consent to the search or the fact he was under arrest at the time he gave his consent will per se make the given consent coerced. Here the consent was given after the officers had informed him that they would obtain a search warrant if he refused to let them search his home so the waiver is both voluntary and competent. Simmons v. Bomar (U.S.D.C.Tenn.1964) 230 F. Supp. 226; Simmons v. State, 210 Tenn. 443, 360 S.W.2d 10; Commonwealth v. Wright, 411 Pa. 81, 190 A.2d 709. Concerning the giving of the consent while

under arrest the cases generally uphold the view that such facts do not per se make the consent involuntary. This court has held in a long line of cases, the most recent being State v. Nelson, 130 Mont. 466, 304 P.2d 1110, that if one consents to have his premise searched by an officer without a search warrant he cannot complain of it as an illegal search. State ex rel. Muzzy v. Uotila and Certain Intoxicating Liquors, 71 Mont. 351, 229 P. 724." See also McDonald v. United States, 307 F.2d 272 (10th Cir. 1962); Channel v. United States, 285 F.2d 217 (9th Cir. 1960); Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951).

The fact that the police officers found the additional incriminating evidence when packing up the appellant's personal possessions does not change the character of the evidence. They were packing his possessions at his request and under such a situation there is no unlawful search. Commenting on a similar fact situation in a recent federal case the Sixth Circuit said in the case of United States v. Blackburn, 389 F.2d 93 (1968):

"The police employed their usual procedure when a person who was staying in a hotel or motel room was arrested. In sending for the belongings of the parties there was no intention of making a search for evidence or instruments of the crime. The conduct of the police department in sending for the personal effects of the parties, itemizing them and storing them for safekeeping was entirely reasonable and logical. We find that the action of the police officers does not constitute a search.

" 'A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guil to be used in prosecution of a criminal action. The term implies exploratory investigation or quest.' Haerr v. United States, 240 F.2d 533, 535 (C.A. 5)." See also State v. Williams, 153 Mont. 262, 455 P.2d 634; Heffley v. State (1967), 83 Nev. 100, 423 P.2d 666; State v. Pederson, 102 Ariz. 60, 424 P.2d 810.

The appellant's contention that looking in the door of the apartment in the first instance constituted a search is without

merit. An observation of an officer of what is in plain sight cannot be held to be an unreasonable search for a "search" denotes an intention to find and without such an intention there simply can be no search.

Issue B raised by the appellant concerns whether evidence of other crimes should have been excluded. We find no prejudicial error. Assume that the evidence here complained of did raise another offense, it was necessary in the orderly presentation of the State's case to enable the jury to understand the circumstances which lead the officers to go to appellant's apartment to pack his belongings. The very heart of the case is whether the search was voluntary or involuntary, all of which tied into appellant's arrest and custody. Too, the record showed only that he was stopped for driving a stolen vehicle and not that he had anything to do with the taking of the vehicle.

We do not find from the record that the appellant's rights were prejudiced by the admission of testimony concerning his arrest or the admission of observed articles in his apartment for the trial court in its instructions properly instructed the jury to prevent any prejudice arising as follows:

"Testimony of witnesses in this case relating to other crimes which may have been committed by Mr. Braden are not to be considered by you as any evidence of his guilt of the crime charged and you are to bear in mind that Mr. Braden is charged and is being tried for one (1) crime only."

Issue C raised by appellant concerns whether the evidence is sufficient to support the verdict and whether the verdict is consistent with law. Section 94-4301, R.C.M.1947 defines robbery as follows:

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

The State's evidence established the robbery; that the victim Vaughn was threatened with a club; that he was put in fear of the robber's actions; that the sum of $275 was forcibly taken.

While the identification was established through circumstantial evidence, the witness Vaughn identified the various articles of clothing taken from the appellant's apartment as being identical to those worn by the robber. He was also able to give a physical description of the robber which matched that of the appellant. The jury after receiving all the evidence and the court's instructions found the appellant guilty beyond a reasonable doubt. This Court held in State v. Cor, 144 Mont. 323, 396 P.2d 86, that "evidence that is material, relevant and competent will be admitted * * * the court shall not, indeed cannot, set aside the solemn findings of the trier of the facts."

Issue D, the final issue raised, concerns whether appellant's rights were prejudiced by the conclusions of the officer as to the ownership of the exhibits introduced. The tags which identified State's exhibits 1, 2 and 3, the articles of clothing taken from appellant's apartment, indicated that the items were the property of one "Randy Haglund".

The officer who tagged the items testified fully as to how and where he found the items and how he tagged them, this being necessary to maintain an unbroken chain of evidence. At the time the exhibits were introduced no objection was made to the so-called conclusions on the tags. Failure to object at the time the exhibits were introduced precludes appellant from raising this issue on appeal. State v. Jensen, 153 Mont. 233, 455 P.2d 631; State v. Campbell, 146 Mont. 251, 405 P.2d 978, 22 A.L.R. 3d 824.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL and CASTLES, and the Honorable THOMAS DIGNAN, District Judge sitting in place of MR. JUSTICE BONNER, concur.