No. 12111

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE OF MONTANA,

          Plaintiff and Respondent,

-vs-

DANIEL EDWARD O'DONNELL,

          Defendant and Appellant.

---

Appeal from:   District Court of the Second Judicial District,
              Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

    For Appellant:

        Holland, Holland and Haxby, Butte, Montana.
        Leonard J. Haxby argued, Butte, Montana.

    For Respondent:

        Hon. Robert L. Woodahl, Attorney General, Helena,
        Montana.
        David V. Gliko argued, Assistant Attorney General,
        Helena, Montana.
        Lawrence G. Stimatz, County Attorney, Butte, Montana.
        J. Brian Tierney, Deputy County Attorney, Butte,
        Montana.

---

                        Submitted:  February 15, 1972

                        Decided:  APR 14 1972

Filed: APR 14 1972

*Thomas J. Kearney*
              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant was convicted of manslaughter by jury verdict in the district court of the second judicial district, Silver Bow County, the Hon. James D. Freebourn, judge presiding, and sentenced to seven years in the state penitentiary. From that verdict and judgment, defendant appeals.

On the night of April 10-11, 1970, at approximately 12:37 a.m., the Butte fire department received a call requesting it to proceed to defendant's home with a resuscitator. Upon arrival, the firemen found defendant's stepson, three year old Donald Cuchine, in a state of apparent lifelessness. The firemen's attempts to revive the child were unsuccessful so they rushed him to the hospital, where he was pronounced "dead on arrival".

A visual examination and an internal autopsy of the body revealed: the boy's body was covered with bruises and his stomach was distended; there was one group of bruises that fit the pattern of a person's knuckles; the boy had received prior injuries to his ribs; and, there was an adhesion or scar tissue on the mesentery indicating an old wound. A coroner's inquest determined death resulted from the rupture of the large blood vessel in the mesentery, which caused the boy to bleed to death internally. The distended stomach was a result of the internal bleeding. Further, the consistency of the blood in the stomach cavity indicated the hemorrhage had occurred just ten minutes prior to death.

Both defendant and his wife, Carol, were away from home the evening of April 10, 1970. Their children, including Donald, had been left in the custody of two/babysitters, Leland Docken
teen-age

- 2 -

and Mike Mazzola. When defendant returned home alone around 11:30 p.m., young Donald Cuchine was asleep on the living room couch. Defendant then drove the two babysitters home, leaving Donald unattended.

Both of the babysitters testified that when defendant returned home he appeared to have been drinking and was in a "mean mood". They also testified that when they left defendant's home the house was neat and orderly and Donald Cuchine did not have any bruises on his face.

The events following defendant's return to his home, after taking the babysitters home, are somewhat confused and the testimony is conflicting. Defendant testified that after he returned home he had been watching television for about 15-30 minutes when he heard Donald fall off the living room couch. Donald "had wet himself", so defendant changed his shorts and pajamas. After changing and dressing Donald, defendant laid him back on the couch. "A few minutes later he rolled off the couch and started vomiting." Donald appeared faint and pale so defendant put him on a kitchen chair and "started to get him a drink of water". Donald fell off the chair. Defendant gave Donald a glass of water but he just "kept on vomiting". Defendant then testified that he ran upstairs, caught his foot on the telephone cord and pulled it from the wall. When he returned, Donald appeared to be "passing out" so defendant ran over to his sister-in-law's house and tried to locate his wife. Failing to find her, he returned home and administered mouth-to-mouth resuscitation to Donald, but without success.

In the meantime, defendant's mother-in-law, Mrs. Fred Docken, called a telephone operator requesting that help be sent to the O'Donnell home. Apparently, the Butte fire department received its call from the telephone operator.

Defendant raises five issues on appeal, alleging:

1. The use of inadmissible photographs and the chart was prejudicial to the defendant and therefore reversible error.

2. All reference to the broken telephone, a pair of shoes, a stick, and a pair of pajamas was immaterial and irrelevant and only served to prejudice the minds of the jury against the defendant.

3. The prosecution was allowed to impeach its own witness.

4. The evidence was insufficient to support the verdict.

5. Defendant's motions for a mistrial, directed verdict of not guilty, and to advise the jury to acquit, should have been granted.

The first issue concerns the use of photographs of the deceased in a criminal prosecution. At trial seven photographs depicting the body of the deceased from various angles were offered in evidence by the state. Defendant's counsel objected to their admission on the basis that the pathologist could testify to the facts in the pictures and the "pictures are unreasonable and inflammatory". Counsel cited State v. Bischert, 131 Mont. 152, 308 P.2d 969. The trial court reserved its ruling at this time in order to see if the photographs would be connected up with the crime charged.

The pathologist, Dr. Newman, testified that blood hemorrhaging in the boy's stomach cavity had caused the distension. This distension became a factual issue during the trial, or more precisely, the time that distension of the stomach occurred became an issue. Dr. Newman further testified that "the fatal blow was delivered about ten minutes prior to the cessation of life of the infant"; that the "blow" caused the hemorrhaging and the hemorrhaging caused the stomach distension. State's exhibit #4, a photograph of the left side of the body, was admitted into evidence over objection for the sole purpose of showing the nature and extent of the distension of the stomach.

This Court in State v. Warrick, 152 Mont. 94, 100, 446 P.2d 916, held that "color photographs that have probative value are admissible", citing State v. Rollings, 149 Mont. 481, 428 P.2d

- 5 -

462. Photographs that are "probative and material" are admissible. State v. Logan, 156 Mont. 48, 60, 473 P.2d 833. In State v. Quigg, 155 Mont. 119, 145, 467 P.2d 692, this Court cited State v. Campbell, 146 Mont. 251, 261, 405 P.2d 978:

> "'Photographs are admissible for the purpose of explaining and applying the evidence and assisting the court and jury in understanding the case. Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 P.2d 1025. When the purpose of an exhibit is to inflame the minds of the jury or excite the feelings rather than to enlighten the jury as to any fact, it should be excluded. State v. Bischert, 131 Mont. 152, 308 P. 2d 969.'"

See also: State v. Adams, 76 Wash.2d 650, 458 P.2d 558; State v. Hill, 193 Kan. 512, 394 P.2d 106; People v. Spencer, 60 C.2d 64, 383 P.2d 134.

Here, the photograph was properly admitted to show the nature and extent of the stomach distension. The photograph allowed the jury to judge whether or not such an abnormal stomach condition would have been noticeable had it existed several hours prior to death, as contended by two witnesses for the defendant.

Defendant alleges error in that the prosecution was continuously "flashing" an elaborate set of photographs of the boy's body before the jury. This specification of error is addressed to actions of the prosecution which are not recorded in the transcript. The transcript does show the prosecution did attempt, unsuccessfully, to have such photographs admitted into evidence. Nowhere does the record indicate that the photographs were "flashed" before the jury.

Defendant's second specification alleges error in the admission into evidence of five photographs depicting the condition

of the interior of defendant's home as it looked shortly after young Donald Cuchine was pronounced dead at the hospital. The basis for defendant's objection is that these photographs are not relevant or material.

Four of the photographs, State's exhibits #8, #9, #10, and #11, all show the dining area of defendant's home; they show the position of a black shoe or pair of black shoes which defendant was alleged to have used to strike the boy. Exhibits #8 and #9 show a stick on the dining room table, however its connection with the crime was never established. All four exhibits show the position of the pajamas worn by the deceased on the evening of his death. The pajamas were material to the theory of the state's case. The position, as well as the condition, of the pajamas indicated that certain unexplained events had taken place between the time the babysitters left defendant's home and the time the Butte firemen arrived. Exhibits #10 and #14 show the broken telephone cord, which played a part in the state's theory of the case in so far as it tried to prove that some sort of violent activity had taken place at the home after the babysitters had left.

While the stick does not appear to be relevant, we are of the opinion that the pajamas, shoes and telephone cord are relevant and material and the photographs depicting these items were properly admitted. Evidence that is admissible for one purpose, but not for another, must not be excluded. Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 357 P.2d 4, citing Edquest v. Tripp & Dragstedt Co., 93 Mont. 446, 19 P.2d 637.

Defendant alleges error in the use of a chart during the trial upon which the pathologist, Dr. Newman, was asked to locate the position of various cuts and bruises. This chart was used by Dr. Newman for illustrative purposes. During his testimony when it developed that many of the scars were old and healing and had nothing to do with the events of April 10-11, the trial court quite properly admonished the jury not to consider any of the evidence concerning those body scars. The exhibit was not allowed to be considered as evidence by the jury. Defendant made no objection to the ruling of the trial court, so the matter cannot now be raised/on appeal. Too, defendant failed to ask for any curative instruction, if one were needed.

Defendant's third specification of error is that the trial court improperly allowed the prosecution to impeach its own witnesses in that inconsistent statements were elicited from both Leland and Darla Docken. We do not believe that we have a case of impeachment here. What we do have is merely inconsistent statements offered by a witness on direct examination. No showing was made that such inconsistent statements were harmful to the defendant's case. If anyone derived any benefit from the inconsistent statements of Leland and Darla Docken, it should have been the defendant. It was for the jury to decide the weight that should be given to these two witnesses' testimony.

Defendant's fourth contention is that the evidence is insufficient to support the verdict. We find no merit in this contention. While the bulk of the evidence presented by the state was circumstantial, there was one witness who offered

eyewitness evidence. Darla Docken, defendant's sister-in-law, testified that she saw the defendant strike Donald Cuchine with a shoe and a belt; she heard Donald screaming; and, that defendant was hollering at Donald sometime just prior to Donald's death. The testimony of Darla Docken combined with the testimony of the pathologist as to the cause of death (blood vessel rupture, caused by a heavy blow to the abdomen and that blow was delivered approximately ten minutes prior to death), plus the further fact that defendant was the last person to be with the boy prior to his death, are sufficient for a jury to reach a verdict that defendant was guilty of manslaughter.

Defendant's last specification of error is that the trial court erred in not granting his motion for either a mistrial or a directed verdict at the close of the state's case-in-chief.

The allegations of prejudice which gave rise to defendant's motion for a mistrial have been discussed in our treatment of the first three specifications of error. Since there was no prejudice, defendant's motion for a mistrial was properly denied.

The rule governing the granting of motions for directed verdicts is stated in State v. Yoss, 146 Mont. 508, 514, 409 P.2d 452:

> "A directed verdict in a criminal case in this jurisdiction is given only where the State fails to prove its case and there is no evidence upon which a jury could base its verdict. State v. Widdicombe, 130 Mont. 325, 301 P.2d 116; State v. Welch, 22 Mont. 92, 55 P. 927; State v. Rother, 130 Mont. 357, 303 P.2d 393."

See also: Section 95-1909(i), R.C.M. 1947.

Here, there was ample evidence presented upon which a jury could have based its verdict. Since the sufficiency of the evidence was discussed heretofore, we need not delineate the evidence which was presented during the state's case-in-chief.

The judgment is affirmed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____
Associate Justices

_____
Hon. Jack Shanstrom, District
Judge, sitting for Justice
Wesley Castles.